No. 41,394

CARL YOUNG and SARAH YOUNG, *Appellants*, v. CECIL E. BARKER, *Appellee*

(342 P. 2d 150)

Opinion filed July 10, 1959.

*Manford Holly,* of Wichita, argued the cause, and *A. D. Weiskirch* and *William C. Farmer,* both of Wichita, were with him on the briefs for appellants.

*Paul R. Wunsch,* of Kingman, argued the cause, and *Chas. H. Stewart,* of Kingman, was with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: This was an action to recover alleged usurious charges previously paid by Carl and Sarah Young, the plaintiff borrowers, to Cecil E. Barker, the defendant lender. Judgment was entered in favor of the defendant and the plaintiffs have appealed.

Plaintiffs' petition sets forth two causes of action. The first cause of action alleged that on or about May 9, 1956, they executed and delivered to defendant a promissory note in writing in the amount of $17,145, payable in monthly installments of $571.50 on the 10th day of each month beginning on June 10, 1956, until the full amount was paid; that the note called for 10 percent interest after maturity and that the note together with interest was paid in full by them on May 6, 1957. The note, a copy of which was attached to and made a part of the petition, contained an acceleration clause and gave plaintiffs the privilege of paying one or more installments on any payment date.

It was further alleged that at the time the note was executed, defendant represented he was charging interest at the rate of 8 percent per annum; that they relied upon such representation; that after payment in full was made, they discovered the total consideration received by them was only $11,906.86, leaving an excess of $5,238.14 more than the actual value received; that payments were made in accordance with the terms of the note for the months of June, 1956, to April, 1957, inclusive, and that the balance of $10,413.50 was paid on May 6, 1957, upon demand by defendant who gave them a discount of $445. Plaintiffs then alleged there was a total overpayment of $3,869.57, and that pursuant to the provisions of G. S. 1955 Supp., 16-203 and other existing statutes, they were entitled to recover double the amount of the excess even after the payment of such excess.

For their second cause of action, plaintiffs alleged that on or about October 27, 1956, they executed and delivered to defendant a promissory note in the amount of $1,957 with 10 percent interest per annum from date payable in six equal monthly installments of $100 commencing on November 10, 1956, with a final installment of $1,357 due on May 10, 1957; that the note, a copy of which was attached to and made a part of the petition, further provided that if interest was not paid when due it was to be added to the principal and draw 10 percent interest; that the note was paid in full as provided therein; that the total consideration received by them upon the note was $1,657.03, leaving an excess of $299.97 more than the true value received; that considering the total consideration received of $1,657.03 and computing interest at 10 percent, the highest legal rate, and considering the payments made, of which defendant had a complete record, there was a total overpayment of $225.85 upon the note, and that pursuant to G. S. 1955 Supp., 16-203, and other existing statutes they were entitled to recover double the amount of the excess even after the payment of such excess. The prayer was for judgment against the defendant on the first cause of action in the sum of $7,739.14, and on the second cause of action in the sum of $451.70, and for costs.

Defendant filed a motion to make definite and certain by requiring plaintiffs to state: (1) the time when they discovered that the total consideration received for the first note was $11,906.86, and (2) the items which made up the consideration for such note. The same request was made with respect to the second cause of action. The motion was sustained and plaintiffs filed an amendment to their petition which alleged they first discovered the total consideration to be $11,908.86 at the time the note was signed and that they were unable to state what items made up the consideration. As to the second cause of action, plaintiffs stated that the consideration was that as alleged in the petition and they could not state what items made up that consideration.

Thereupon, defendant filed his answer admitting the residences of the parties and the execution, delivery and payment of the notes, but denied all of the remaining allegations of the petition, as amended. He specifically denied that there was any overpayment of principal or interest, or that there was any interest charged upon the notes in excess of that permitted by law, and alleged that the interest charged was lawful and not usurious.

The defendant further alleged that with respect to the first cause of action, during May, 1952, plaintiffs borrowed $100 from him on two occasions, and later that same year they borrowed the further sum of $1,500; that sometime later plaintiffs executed and delivered their note for $1,700 bearing interest at 10 percent per annum; that in the spring of 1956 plaintiffs advised him they owed a considerable number of obligations and requested his assistance; that plaintiffs and defendant entered into an oral agreement to the effect that he would loan them the money to liquidate their various obligations and that he would contact their creditors and pay their obligations for which he was to receive for such services the agreed sum of $2,300, and that plaintiffs, together with the parents of plaintiff Carl Young, would execute and deliver to him a note, the principal amount of which would equal the sum of all moneys used to pay plaintiffs' obligations, the note for $1,700 plus $270 interest due thereon, the $2,300 which plaintiffs agreed to pay the defendant for his services, as well as a legal rate of interest.

Defendant further alleged that the terms of the oral agreement were fully performed by all parties and he paid plaintiffs' obligations on or before May 9, 1956, totaling in the approximate amount of $11,000 and that after performing all services to be rendered by him there remained the sum of $9.74 for which he gave plaintiffs his check; that plaintiffs were cognizant of all such facts when they executed the note in question and were informed of the various items making up the amount of the note, and when they paid the note on May 6, 1957, defendant voluntarily discounted $445.

With respect to the second cause of action defendant alleged that in October, 1956, plaintiffs approached him and advised of their financial difficulty upon an obligation which had been assigned by a furniture company to the Central State Bank of Hutchinson, Kansas, and if the obligation was not paid their furniture would be repossessed; that plaintiffs desired to borrow money from him with which to pay off such obligation, and further, wished to employ defendant to contact the creditor to pay their obligation; that the parties orally agreed defendant would contact the creditor and would loan to the plaintiffs sufficient money to pay such obligation; that defendant contacted and paid plaintiffs' creditor; that the amount of the obligation owed by plaintiffs was $1,657, and that they agreed to pay defendant $300 for his services; that the note was executed by plaintiffs in full payment of the money so ad-

vanced and to cover the compensation due the defendant for services rendered to the plaintiffs; that plaintiffs were cognizant of all such facts when they executed the note in question and were well aware of the items making up the amount of such note.

Defendant further alleged that plaintiffs had full knowledge of all facts at the time payment of the notes was made by them, and that payment of each note was made voluntarily on the part of plaintiffs and each of them; that plaintiffs have no right in law to maintain the action and sue upon a purported cause of action, and that the laws of Kansas do not give plaintiffs any right to maintain the action. The prayer was that plaintiffs take nothing by the purported causes of action.

Plaintiffs filed a reply, denying all the allegations of the answer which were inconsistent with those of the petition as amended.

The defendant then filed a motion for judgment on the pleadings upon the ground they showed the facts alleged in plaintiffs' petition and the amendment would not warrant a judgment being rendered against the defendant, and that under the facts as alleged no cause of action existed in favor of the plaintiffs and against the defendant. The trial court sustained the motion for judgment on the pleadings and entered judgment for the defendant, and plaintiffs perfected this appeal.

Ordinarily a motion for judgment on the pleadings invokes the judgment of the trial court on questions of law as applied to the pleaded and conceded facts. Thus, if no material issues of fact are joined by the pleadings, then a question of law as to which party is entitled to judgment is presented for the determination of the court. Under such circumstances, the motion for judgment on the pleadings is equivalent to a demurrer in that it admits the truth of all well-pleaded facts in the pleadings of the opposing party and, in ruling upon such a motion, the pleadings of the moving party are to be ignored. (*Hirt v. Bucklin State Bank,* 153 Kan. 194, 198, 109 P. 2d 171; *Whitaker v. Douglas,* 177 Kan. 154, 277 P. 2d 641; *Dearborn Motors Credit Corporation v. Neel,* 184 Kan. 437, 444, 337 P. 2d 992.) However, where issues of material fact upon which a valid judgment might be based are joined by the pleadings, a judgment on the pleadings is improper and this rule is not altered merely because the issue is offered or joined by a pleading defective in form. (*Ewing v. Pioneer Nat'l Life Ins. Co.,* 158 Kan. 371, 374, 375, 147 P. 2d 755; *Buechner v. Trude,* 175 Kan. 572, 574, 266 P. 2d

267; *Geier v. Eagle-Cherokee Coal Mining Co.*, 181 Kan. 567, 572, 313 P. 2d 731; *Dearborn Motors Credit Corporation v. Neel*, supra, p. 444.)

A review of the pleadings in the instant case reveals that issues of fact were joined by the pleadings. Plaintiffs alleged they had paid usurious interest on the two notes in question and in his answer defendant denied that such was the case. He also alleged in his answer that the payments on the notes were made voluntarily by plaintiffs, which they denied by way of reply. Thus, issues of fact as to whether defendant charged interest at a usurious rate and whether plaintiffs voluntarily paid the notes were presented. If those issues of fact are material and are such that a valid judgment might be based thereon, then the motion for judgment on the pleadings was improperly sustained by the trial court and judgment for the defendant must be reversed.

In determining this question we are met at the outset with defendant's contention that the instant case is governed and controlled by the landmark case of *Marshall v. Beeler*, 104 Kan. 32, 178 Pac. 245, which held that the provisions of the statute regulating the legal rate of interest and providing penalties and forfeitures for taking or contracting for the payment of interest in excess of the statutory rate (Gen. Stat. 1915 §§ 5482, 5483 [G. S. 1955 Supp. 16-202, 16-203 at the time the notes in question were executed and delivered]) abrogated the borrower's common law right to recover back usurious interest. The defendant argues that even if he concedes there was usurious interest included in each of the notes, plaintiffs cannot maintain this action; that their rights, if any, are governed by G. S. 1955 Supp. 16-202 and 16-203, which are defensive in nature, that is, by their refusal to pay on the instrument providing for the usurious interest or charges, and when sued thereon, to set up the usury as a defense and counter-claim to the action and recover double the amount of such usurious charges; that having passed up such right and having paid the principal and interest on the notes in question, plaintiffs are barred by law from now bringing an action to recover the alleged excessive charges contained in those instruments. Further, that plaintiffs have mistakenly construed G. S. 1955 Supp. 16-203 as the basis of their cause of action since that statute gives rise only to a cause of action to those borrowers who are forced to pay excessive charges to a bona fide holder of a negotiable instrument, in which event such

a borrower may recover back in an action against the party originally exacting the usury, double the amount of the excessive interest or charges incorporated in the negotiable instrument.

We have no quarrel with the holding announced in *Marshall v. Beeler,* supra, and we give full recognition and adherence thereto, but, in view of reasons hereafter stated, that decision does not furnish a complete answer to the question presented in this appeal.

The statutes regulating the legal rate of interest and providing penalties and forfeitures for taking or contracting for the payment of interest in excess of the statutory rate in effect when the Marshall case was decided (Gen. Stat. 1915, §§ 5482, 5483 [G. S. 1949, 16-202, 16-203 and 16-205]) were enacted in 1889 (L. 1889, ch. 164, §§ 2 and 3) and remained unchanged from that time until 1955 when they were amended and incorporated into the Consumer Loan Act (L. 1955, ch. 135, §§ 1-29) as Sections 25, 26 and 27 (G. S. 1955 Supp. 16-202, 16-203 and 16-205). The Consumer Loan Act was a new enactment designed to legalize and regulate the business of making comparatively small "consumer type" installment loans and to fix the maximum amount of interest or charges in all cases for the loan or forbearance of money. G. S. 1955 Supp. 16-202 was amended at the regular 1957 session of the legislature, but in particulars not material to this decision.

As plaintiffs seek relief under G. S. 1955 Supp. 16-203 and "other existing statutes," it becomes necessary that pertinent sections of the Consumer Loan Act be considered, and in so doing, they must be construed together since they are all a part of the same enactment. However, the provisions of the sections amended (G. S. 1955 Supp. 16-202, 16-203 and 16-205) so far as they are the same as those of the prior statutes, are required to be construed as a continuation of such provisions and not as a new enactment. (G. S. 1949, 77-201, *First; Pinkston v. Rice Motor Co.,* 180 Kan. 295, 305, 303 P. 2d 197.)

Bearing in mind that the notes in question were executed in 1956, we turn now to applicable sections of the Consumer Loan Act (all reference to the act is directed to G. S. 1955 Supp. unless otherwise noted). Pertinent parts of Section 25 (16-202) read:

"Contract rate; installment loans of $2,000 or less; forfeitures; attorneys' fees. (*a*) *Contract rate.* The parties to any bond, bill, promissory note or other instrument of writing for the payment or forbearance of money may stipulate therein for interest and charges receivable upon the amount of such bond, bill, note, or other instrument of writing, at a rate not to exceed ten

percent (10%) per annum unless otherwise specifically authorized by law. (*b*) *Installment loans of two thousand dollars ($2000) or less.* Any person may loan to any borrower an amount of two thousand dollars ($2,000) or less for a period not exceeding thirty (30) months and add to such loan or deduct therefrom in advance from the proceeds of such loan, interest or discount at a rate not exceeding eight percent (8%) per annum of the total amount of the loan from the date thereof until the maturity of the final installment, notwithstanding that the principal amount of such loan is required to be paid in installments. . . . The premium or other identifiable charge for insurance permitted to be written in connection with such loan may be collected from the borrower or included in the principal of the loan at the time the loan is made. Any person so contracting for a greater rate of interest or charges than authorized by law shall forfeit all interest and charges so contracted for in excess of the amount authorized by law; and in addition thereto shall forfeit a sum of money, to be deducted from the amount due for principal and lawful interest or charges, equal to the amount of interest or charges contracted for in excess of the amount authorized by law *and such amounts may be set up as a defense or counterclaim in any action to enforce the collection of such obligation and the borrower shall also recover a reasonable attorney's fee.* [G. S. 1949, § 16-202; L. 1955, ch. 135, § 25; July 1.]" (Emphasis supplied.)

In the main, 16-202 contains all the provisions of the prior statute and new provisions relating to (1) installment loans of $2,000 or less, (2) the purchase of insurance and payment of premiums in addition to interest or charges for the loan, (3) expressly provides the borrower a defense or counterclaim to recover usurious charges, and (4) the right to recover reasonable attorney's fees.

As is observed, the remedy provided the borrower is that any interest or charges contracted for in excess of the amount authorized by law (10 percent per annum) is declared forfeited and an equal amount deducted from the amount due for principal and lawful interest or charges, which may be set up as a defense or counterclaim in an action brought to enforce collection of the obligation. The effect of the italicized portion of 16-202 above quoted, added by the 1955 amendment, is to place into the statute the effect of this court's holding in the Marshall case, and makes the borrower's remedy in that respect one of defense and counterclaim where suit is brought to enforce the usurious obligation. Thus, it is clear that plaintiffs, having paid the notes in question, have no cause of action under 16-202 to recover back the alleged usurious interest or charges.

Plaintiffs allege that their cause of action is based upon 16-203 and "other existing statutes" to recover double the amount of the

alleged excess. Section 26 (16-203) is substantially the same as the prior statute. The section reads:

"Usurious interest or charges; remedies. All payments of money or property made by way of usurious interest or charges, or of inducement to contract for more than the maximum amount authorized by law, whether made in advance or not, shall be deemed and taken to be payments made on account of the principal and the maximum amount of interest or charges authorized by law per annum, and the courts shall render judgment for no greater sum than the balance found due after deducting the payments of money or property made as aforesaid: *Provided,* That no bona fide endorsee of negotiable paper purchased before due shall be affected by any usury exacted by any former holder of such paper unless he shall have actual notice of the usury previous to his purchase. It is further provided that double the amount of such excess incorporated into negotiable paper may in such cases, after payment, be recovered back by action against the party originally exacting the usury, in any court of competent jurisdiction."

It is clear that plaintiffs' petition does not state a cause of action under 16-203. That section gives a cause of action to a borrower against the party originally exacting the usury to recover back from such party double the amount of such excess where the instrument has been negotiated to a bona fide endorsee without notice of the alleged usurious charges, and the borrower has paid the full amount of such charges to the endorsee. (*Marshall v. Beeler,* supra.) That is not the case here.

Sections of the Consumer Loan Act thus far examined do not give plaintiffs a cause of action to recover the charges alleged to be usurious. We turn now to Sections 4 and 28 of the act (16-404 and 16-425) which are, however, of particular importance and are the "other existing statutes" as alleged in plaintiffs' petition. Thereunder, plaintiffs contend, the note set forth in the second cause of action is void in its entirety and that they may recover the principal and all interest paid the defendant, notwithstanding they paid such amounts in full. That part of 16-404 here pertinent reads:

"Loans of $2,100 or less; license required to engage in business when; exemptions from act; evasions; invalidity of certain loan contracts. (*a*) *Scope; prohibiting engaging in the business of making loans of two thousand one hundred dollars ($2,100) or less, except after having obtained a license; exemptions.* On and after August 1, 1955, no person shall engage in the business of making loans or advances of money on credit in amounts of two thousand one hundred dollars ($2,100) or less and contract for, charge, or receive directly or indirectly on or in connection with any such loan or advance, any charges whether for interest, compensation, consideration, or expense which in the aggregate are greater than the interest or charges otherwise permitted by

section 16-202 of the General Statutes of 1949, as amended, except as provided in and authorized by this act. . . .

"(b) *Evasions.* The provisions of subsection (a) shall apply to any person who seeks to evade its applications by any device, subterfuge or pretense whatsoever.

"(c) *Invalidity; penalty.* Any contract of loan in the making or collection of which any act shall have been done which violates subsection (a) of this section shall be void and the lender shall have no right to collect, receive, *or retain any principal, interest, or charges whatsoever.*" (Emphasis supplied.)

We think it clear the legislature intended this section to mean that no person shall *engage in the business of making loans* in amounts of $2,100 or less, and contract for, charge, or receive, directly or indirectly, in connection with any such loan or advance, any charges whether for interest, compensation, consideration, or expense, which in the aggregate are greater than the rate allowed by 16-202, unless such person elects to become a licensee under the act (16-406,) in which case he may make loans or advances of money and contract for and receive interest or charges as provided in 16-410. Further, with respect to installment loans authorized by 16-202 (b), we think the legislative intent is clear that such loans are governed by 16-404 if made by a person "engaged in the business of making loans," since such loans may be made in an amount of $2,000 or less for a period not exceeding 30 months with interest or charges added or deducted in advance, at a rate not exceeding 8 percent per annum of the total amount of the loan from date until maturity of the final installment. Thus, installment loans authorized under 16-202 (b) fall within the limitation of loans of $2,100 or less provided in 16-404, and interest or charges made in connection with such loans may not in the aggregate exceed the interest or charges otherwise permitted by 16-202 and 16-404. It would seem, therefore, that with respect to the second cause of action, subsection (c) of 16-404, by implication at least, if not by express terms, would give plaintiffs a cause of action whereby they might recover not only the usurious charges but the prinicpal of the note and lawful interest as well, if they alleged and proved that the defendant was "engaged in the business of making loans" and that the note referred to contained interest or charges in excess of that permitted by 16-202 (b) and 16-404. Since no such allegation was made, the conditions for the assertion of 16-404 to the installment loan referred to in the second cause of action are not present, and plaintiffs did not allege a cause of action under 16-404 (c).

Plaintiffs' right to recover the usurious charges, if any, on both causes of action may be based upon other grounds to which we now refer. Section 16-425 (*a*) provides:

"Penalties. (*a*) Any person who shall *contract for, or receive interest or charges* on any bond, bill, promissory note or other instrument of writing, at a rate exceeding the maximum amount authorized by law shall be guilty of a misdemeanor and upon conviction shall be punished by a fine of not more than five hundred dollars ($500) or by imprisonment for not more than six (6) months, or both." (Emphasis supplied.)

That provision was not in effect at the time the Marshall case was decided, and therein lies the difference between Marshall and the instant case. That section was incorporated as Section 28 of the Consumer Loan Act and became the law of this state for the first time in 1955. Its enactment was a step forward by the legislature to strengthen our laws against the selfish demands of money lenders and to provide for their prosecution and punishment for contracting for, or receiving usurious interest or charges in connection with the loan or forbearance of money. In interpreting what is now 16-202 and 16-203 this court in the Marshall case pointed out that those statutes recognized that parties to a usurious transaction "are not *in pari delicto,* because the statute was enacted for the protection of the debtor." (p. 43.) It was also recognized in Marshall that where a statute in relation to usury declares usurious contracts void in whole or in part, or punishes a violation of its provisions by the infliction of fines or penalties upon the person taking it, the debtor may recover back the usurious payments. (p. 39.) However, since statutes in effect at the time of Marshall did not impose criminal sanctions for the taking or receiving of usury, it was held the debtor could pay the excessive interest, refuse to plead usury as a defense, and the transaction was not void. In other words, prior to 1955 the exacting of usury was considered a mere contractual matter of concern to nobody but the parties themselves, except the right of the state to enjoin continuous usurious lending upon the ground that it was a public nuisance and injurious to the welfare of the people (*State, ex rel., v. Miller,* 177 Kan. 324, 279 P. 2d 223, 52 A. L. R. 2d 691). However, as between the parties, if a borrower wanted to contract for and pay interest in excess of 10 percent he could waive the usury law by not claiming its benefits, in which event the contract was not void, but was made voidable at the election of the debtor. He could voluntarily pay the usurious

charges or he could compel the lender to commence an action to enforce the obligation, thereby giving him the election of pleading the statute, forfeiting the excess of 10 percent, and recover an amount equal thereto to be deducted from the principal and lawful interest. But, 16-425 (a) changed the policy of this state with respect to the usurious loaning of money and made it unlawful for any person to contract for, or receive interest or charges at a rate exceeding the maximum amount authorized by law, and upon conviction, provided for a fine or imprisonment, or both.

The question of usury appears to be purely one of fact (*Lynn v. McCue*, 94 Kan. 761, 147 Pac. 808; *State, ex rel., v. Miller*, supra), and, as previously indicated, plaintiffs alleged in both causes of action that the interest or charges in question were usurious and excessive. That, however, was denied by the defendant. If we consider those allegations to be true, which we are enjoined to do in ruling upon the motion for judgment on the pleadings upon appellate review (*Hirt v. Bucklin State Bank*, supra; *Whitaker v. Douglas*, supra; *Dearborn Motors Credit Corporation v. Neel*, supra), then the defendant contracted for and received interest or charges at a rate greater than is authorized by 16-202 (a) and (b) and therefore violated 16-425 (a)—a misdemeanor.

The primary purpose of the Consumer Loan Act is preventive rather than punitive, and should be construed so as to accomplish its remedial purpose. Accordingly, its provisions should be liberally construed in favor of the borrower and should not be more strictly construed as to the lender than its language and objectives demand. The tendency is to permit recovery where the statutes declare the contract void in whole or in part, or punishes a violation of its provisions by the infliction of a fine or penalties, upon the person who takes it. (Annotation 59 A. L. R. 2d 522.) While we recognize that decisions of this court are such that where a statute provides a violation thereof shall be a misdemeanor, a contract made in direct violation of the same is illegal and there can be no recovery thereon although such statute does not in express terms prohibit the contract or make it void (*Pinney v. Bank*, 68 Kan. 223, 230, 231, 75 Pac. 119; *Bourbon County Comm'rs v. Miller*, 132 Kan. 52, 294 Pac. 863; *National Bank v. White*, 133 Kan. 490, 493, 1 P. 2d 257; *Roddy v. Hill Packing Co.*, 156 Kan. 706, 715, 137 P. 2d 215), nevertheless the gist of the criminal offense defined by 16-425 (a) is the *contracting for or receiving of interest or charges at a rate exceeding the maximum*

*amount authorized by law.* Thus, it is only the excessive interest or charges which are made illegal, not the contract itself.

Under the circumstances here alleged, it would be unjust and unconscionable to permit the defendant to retain the usurious interest or charges contracted for and received, and the law imposes a duty to repay such unjust and unmerited enrichment and provides a remedy to the borrower by an action for money had and received, to recover the amount of such unlawful payments. It would be futile to say that conduct of the defendant which is unlawful and the road to prison on the criminal side of the court, is lawful on the civil side of the court and would preclude plaintiffs from recovering the fruits of the defendant's crime. We import no such abortive intention to the legislature.

For the reasons stated above, it is our conclusion that a borrower who has paid excessive or usurious interest or charges to a lender upon a note or other written instrument may recover back such excessive or usurious interest or charges from the lender, notwithstanding his previous voluntary payment. This conclusion in no way conflicts with *Marshall v. Beeler,* supra, but rather is to be considered as providing for a remedy in addition to the one therein prescribed.

Material issues of fact were joined by the pleadings upon which a valid judgment might be based, and the learned trial judge erred in sustaining the motion for judgment upon the pleadings and entering judgment for the defendant. It follows that the order of the trial court should be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

It is so ordered.

PRICE, J., concurs in the result.