No. 44,711

VERN L. FORNEY, *Appellee*, v. PAUL H. GERLING, *Appellant*.

(426 P. 2d 106)

Opinion filed April 8, 1967.

Emmet A. Blaes, of Wichita, argued the cause, and *Roetzel Jochems, Robert G. Braden, J. Francis Hess, James W. Sargent, Stanley E. Wilson, Cecil E. Merkel, Harry L. Hobson, Bruce W. Zuercher, L. D. Klenda, Charles M. Cline, Richard A. Loyd, Stephen M. Blaes* and *Jack S. Ramirez*, all of Wichita, were with him on the brief for the appellant.

*William L. Fry*, of Wichita, argued the cause, and *Vincent L. Bogart* and *Frank W. Hylton*, both of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is a financial fracas between two real estate men, one suing the other in two counts for usurious interest and slander of title. A jury returned a verdict in favor of the plaintiff for a sum of money nowhere supported in the evidence or embraced within the instructions. Appeal has been duly perfected by the defendant specifying trial errors.

Several instructions given to the jury by the trial court are so clearly erroneous as to require reversal of the judgment.

Present counsel for the appellant (defendant below) did not represent him at the trial of this case, and present counsel for the appellee (plaintiff below) were not the first to represent him.

This melee is studded with unconventional financial transactions confounded and intertwined with loans, interest, service fees, commissions, alleged usury, attorney fees, conveyances, mortgages (both first and second), creditors, wives, escrow agent, sister, minor

daughter, guardian, real estate men and mistakes by both court and counsel.

In view of the appellant's contention that the trial court erred in failing to sustain his motion for a directed verdict, it will be necessary to review the evidence.

The medley goes something like this:

Prior to February 15, 1961, Forney (plaintiff-appellee) was a real estate broker, and had conveyed the tract of real estate in question to Kester to secure a loan which Kester was going to get for him. Upon the loan being obtained, Kester was to have a twenty-five percent interest in the tract, which was to take effect after the loan was repaid. Also, prior to February 15, 1961, Forney had discussed with Gerling (defendant-appellant) his financial needs. Gerling was Forney's employee holding a license to sell real estate for him as a broker. Forney stated he had an opportunity to sell the tract, and was going to sell it. Gerling stated he thought he could arrange a loan for Forney so that Forney would not have to sell it. Gerling thought he could get this money from his sister. Forney told him to see if he could get it.

Forney was the only witness who testified in the case. The record discloses that in reliance upon Gerling's statement to Forney that he would get Forney the loan at 6½%, Forney committed himself to his creditors. Exhibit "1," which is the contract between Forney, and Gerling, was typed by Forney on the 15th day of February, 1961, in two parts. The first part consisted of four pages in the record on appeal and is signed at the end thereof by Gerling and Forney and their respective wives.

After these signatures at the end, entitled "Supplement to Gerling-Forney Contract," is a short paragraph. It is dated the 15th day of February, 1961, and signed by Gerling and Forney.

The first part of Exhibit "1" purports to be a contract wherein Gerling and his wife agree to sell to Forney and his wife the real property in question, the purchase price being the total sum of $39,760.17 to be paid as follows:

"(a) $13,000.00 with interest thereon at the rate of 6½% per annum on the unpaid balance to be paid by parties of the Second Part to the parties of the First Part in monthly installments of $147.62 beginning on the 15th day of March, 1961 and continuing on the 15th day of each month thereafter until paid.

"(b) $26,760.17 with interest thereon at the rate of 6% per annum on the unpaid balance to be paid by the Parties of the Second Part to the parties of

the First Part in monthly installments of $439.50, which includes Interest, Principal, Taxes, and Insurance, beginning on the first day of March, 1961, and continuing on the first day of each month thereafter until paid. It is agreed that the above mentioned amount of $26,760.17 represents the unpaid balance of a First Mortgage on the above described property, and should the payments increase or decrease due to an adjustment in Tax or Insurance reserve, payments are to be adjusted accordingly."

Other provisions in the first portion of this contract are immaterial, except for the fact that the parties agreed to forthwith deliver to the escrow agent a general warranty deed conveying the real property to Forney. The *escrow agent* thereafter named in the contract was *Gerling*.

The supplement to the agreement reads:

"It is agreed and understood that the $13,000.00 loan mentioned under Paragraph 2-A is from Mr. Gerling's sister and that this loan is guaranteed by Mr. Gerling to be repaid to her by him in any event, and that in addition to the interest mentioned in the original contract, a service fee of $20.00 per week shall be paid to Paul H. Gerling until the $13,000.00 with interest on the unpaid balance at 6½% per annum has been paid in full. It is further agreed that a minimum fee of $2,000.00 will be paid for this loan."

The loan from Gerling to Forney came in various ways, part by way of a receipt for a payment of money Forney owed Gerling's credit union, and a part was in cash over a few days, some of which was paid on the closing day of the contract.

Forney testified when the arrangement was made for the loan, the interest was to be 6½% and no other charge was mentioned or indicated at the time; that he thereupon prepared the first part of Exhibit "1." He testified that the only reason Gerling received title to the property was that it was to be security, in effect a second mortgage; that he gave Gerling title to the property and Gerling agreed to give the title back to him when he paid the $13,000 loan.

On the day the contract between Forney and Gerling was executed, Forney prepared a deed from Kesters to Gerling and notarized their signatures.

Forney further testified it was not until the last minute that Gerling came up with a service fee. On cross examination when asked why he signed the supplement to the contract he testified:

"When I say I was 'under pressure' when I signed Plaintiff's Exhibit 1, I mean I was having demands made on me for money. One of them was Paul Gerling. Mr. Gerling was acting in the capacity of Treasurer of the Community Center Credit Union, demanding money, demanding payment. I did owe money to him. What I mean was I was under pressure from my creditors, that is why

I signed the third page. Mr. Gerling was not to receive a commission for making me a loan, this was the only reason he received title to that property was that it was to be the security, in effect, a second mortgage."

On the 14th day of December, 1961, Forney contracted to sell the tract to Dr. Matthews for $50,000.

On the 15th day of December, 1961, upon request Forney received from Gerling a statement as to what Gerling claimed was due him under the contract.

After the 15th day of December, 1961, by reason of a title opinion Forney learned that Mr. and Mrs. Gerling had conveyed title to the tract of real estate in question to Mrs. Gerling and their minor daughter, contrary to the escrow agreement set forth in the contract.

When Forney talked to Gerling about this Gerling told Forney that he borrowed the money from his daughter, and this was to give her protection, because he was using her money, and so he deeded it to her. (The deed to the daughter was dated October 19, 1961.)

The attorneys for Gerling and Matthews, in accordance with the title opinion requirements of Matthews' attorneys, conducted guardianship proceedings in the probate court to make it possible to close the transaction. By reason of these proceedings Gerling, appointed guardian for his minor daughter, conveyed by guardian's deed, pursuant to court order, the property in question to Forney and his wife on December 29, 1961, upon payment of the balance due under the written contract. The total attorney fee set up in the closing statement for the attorneys of Matthews on December 30, 1961, was $500 (for clearing title, attorney fees, court costs and additional abstracting) at least a substantial portion of which was attributable, according to the record, to the conveyance of the property by Gerling to his wife and minor daughter.

Upon closing the contract Gerling was given a check for $15,-098.98, and a closing statement. This statement showed $500 withheld by Matthews from Forney to cover the clearance of title. Gerling did not pay any part of the $500 withheld, nor was he asked to pay any part.

On the 20th day of January, 1962, demand was made by Forney's attorney upon Gerling by letter, the pertinent portion of which reads as follows:

"According to my client's records he has paid to you as interest on said loan [$13,000] the sum of $2,795.05. The contract calls for the payment of $729.78 as interest on said note and contract. This figure represents an overcharge of $2,065.27.

"This letter is a demand upon you to forthwith remit either to the writer or to my client the sum of $4,130.54. If this sum is not received within five days from the date you receive this letter I shall be forced to take such action as the facts in this case warrant.

"According to the terms of the contract you were escrow holder, but you clouded the title by conveying the title to a minor. Your action cost my client $500.00 in addition to interest above.

"This is also demand upon you for the sum of $500.00 in addition to the excessive interest charged."

It is to be noted $729.78 represents interest at the rate of 6½% in accordance with the contract between Forney and Gerling. The figure stated as an overcharge of $2,065.27 represents all charges over and above 6½% interest. *It does not represent charges over and above 10%, the usurious amount,* as provided in K. S. A. 16-202 (*a*).

Forney filed suit for twice the amount of $2,065.27 on the usury issue, and $500 on the quiet title expense issue.

Judgment was rendered upon the jury's verdict against Gerling for $3,097.90 on the usury issue, and $500 on the quiet title issue.

The appellant Gerling claims that Forney's evidence failed to show that the money obtained for Forney by Gerling was a loan from Gerling, and hence, it failed to show that any money received by Gerling from Forney constituted interest on money loaned by Gerling.

In this connection the appellant relies upon statements of Forney to the effect that Gerling told him he could get the money from his sister in Michigan or Minnesota, or someplace; and that Gerling told him he borrowed the money from his daughter. The appellant argues:

"There is no testimony whatsoever in the record to indicate that the $13,000.00 was borrowed by Forney from anyone other than Mr. Gerling's sister and daughter. Mr. Forney himself testified that this was as he understood the facts to be. The service fee was specifically set out in the agreement prepared by Mr. Forney and signed by Mr. Forney, which agreement also specifically provided for a 6½ interest factor. The only evidence contrary to this position in the record is Mr. Forney's testimony that 'Mr. Gerling was not to receive a commission for making me a loan'."

The appellant relies upon the supplement to the contract between Gerling and Forney and cites *Lynn v. McCue,* 94 Kan. 761, 147 Pac. 808. In that opinion the court said:

". . . The construction company applied to the trust company for a loan of $400,000. The trust company at first considered making it, but finally refused to do so on the ground that the highest lawful rate of interest was

not sufficient compensation in view of the risk involved. Then the trust company offered to procure the loan from the bank for a commission of $60,-000, and the offer was accepted and carried out. To induce the bank to make the loan the trust company agreed to take it up at any time on demand of the bank, and within a short time did so. If the deal was just what it purported to be it was legitimate, the $60,000 was paid as a commission and not as interest, and did not constitute usury . . ." (p. 773.)

The court there held the evidence was not conclusive that the trust company to whom the application for a loan was made was the real lender, and that the transaction was usurious.

On the other hand, the appellee Forney relies upon *Woods v. Curry*, 109 Kan. 677, 202 Pac. 86, which points its finger to the money lender who attempts to avoid the usury laws. In the opinion the court there said:

". . . But all the notes were payable to Woods and George, and drew the full ten per cent interest. It is a common thing for usurers to attempt to avoid the statute by calling any excess of the legal rate a commission or bonus, but if it be exacted from the borrower as a condition to the loan, the latter is tainted with usury no matter what the transaction is called. (39 Cyc. 971.) As a matter of common knowledge, it is true that lenders are frequently compelled to borrow part or all of the sums they loan. It is clear that the bonus of $500 and the one of $1,000 were both usurious." (p. 683.)

Without undertaking to analyze the foregoing two opinions herein, we have carefully examined them, together with the record presented on appellate review, and conclude the trial court did not err in overruling Gerling's motion for a directed verdict on the point at issue. Upon all the evidence a question of fact was presented for determination by the jury—whether the service fee exacted by Gerling in the supplement to the contract was a commission for procuring the loan or whether it was usurious.

The appellant next contends that Forney's evidence conclusively showed that no negotiable instrument was involved in the transaction, and it showed that the alleged interest had actually been paid by Forney, thereby removing the entire transaction from the operation of K. S. A. 16-203.

While it may be conceded the contract in question does not fall in the category of negotiable paper, to which specific reference is made in 16-203, *supra,* it does not necessarily follow that the borrower is precluded from recovering back usurious payments. This point was considered in *Young v. Barker*, 185 Kan. 246, 342 P. 2d 150, where the court said:

"Under the circumstances here alleged, it would be unjust and unconscion-

able to permit the defendant to retain the usurious interest or charges contracted for and received, and the law imposes a duty to repay such unjust and unmerited enrichment and provides a remedy to the borrower by an action for money had and received, to recover the amount of such unlawful payments. It would be futile to say that conduct of the defendant which is unlawful and the road to prison on the criminal side of the court, is lawful on the civil side of the court and would preclude plaintiffs from recovering the fruits of the defendant's crime. We import no such abortive intention to the legislature.

"For the reasons stated above, it is our conclusion that a borrower who has paid excessive or usurious interest or charges to a lender upon a note or other written instrument may recover back such excessive or usurious interest or charges from the lender, notwithstanding his previous voluntary payment. . . ." (p. 258.)

Here Forney's first cause of action stated in the petition does not stand or fall on the allegation of a right to double recovery under the laws of Kansas. The petition alleged payment of "a charge in excess of the contract rate in the sum of $2,065.27."

The appellant contends Forney's evidence shows no basis whatever for the recovery of any damages for the alleged clouding of title to the tract of real property in question.

The evidence discloses $500 was withheld by Dr. Matthews on the closing statement for payment to Smith, Shay, Farmer and Wetta, who were Matthews' attorneys, for the purpose of clearing title, attorneys' fees, court costs and additional abstracting. This expense was passed on to the seller—Forney. Whether all or any part of this sum was attributable to the cloud which Gerling placed upon the title by the conveyance of the property in question to his' wife and daughter was a matter for the jury to determine from the evidence presented.

On the whole record we cannot say the trial court erred in overruling the appellant's motion for a directed verdict. The cross appeal of the appellee from the order of the trial court overruling his motion for a directed verdict is in the same category, and we hold the trial court did not err in overruling it.

The appellant assigns as error the failure of the trial court to give any instructions covering at least the general law applicable to the issues in this case.

The appellant calls our attention to the fact that the trial judge did not instruct the jury as to the definition of interest; what is legal interest; how to compute legal interest; what a commission fee is and the effect of a commission fee as opposed to interest; what

is a service fee and the effect of a service fee as opposed to interest; what is an escrow agent and his right to a commission or service fee; the effect of a written contract signed by the parties; what is or constitutes a cloud on the title; what is or constitutes a quiet title action; and that the court did not give one single instruction pertaining to the second cause of action.

We might add that nowhere did the trial court give any instruction defining usurious interest or charges. (See, K. S. A. 16-202 [a].) Somewhere the jury should at least have been instructed the contract rate of interest in Kansas cannot exceed 10% per annum, and that any interest charged over and above this rate is usurious.

Under K. S. A. 60-251, where a case is tried to a jury, the judge shall instruct the jury at the close of the evidence before argument.

While the foregoing section of the new code of civil procedure does not make specific reference to the giving of general instructions to the jury by the trial court as in the old code (See, G. S. 1949, 60-2909, *Fifth*), we do not think any change was intended by the legislature.

We hold the new code does require the court to give general instructions to the jury, with or without request having been made for the same. In this respect, the court should define the issues and state at least generally the law applicable to them. (*Natanson v. Kline*, 186 Kan. 393, 350 P. 2d 1093.)

The function of instructions is to advise the jury with respect to the law governing all issues joined by the pleadings upon which evidence is adduced. It is not necessary for a court to instruct the jury on an issue made by the pleadings, if it is not supported by the evidence, but the court in giving instructions should not restrict or ignore the issues formed by the pleadings and supported in the evidence. The claim of the parties as made by the pleadings, if supported by evidence, should be fairly and justly stated to the jury by proper instructions. (*Lord v. Hercules Powder Co.*, 161 Kan. 268, P. 2d 299; *Insurance Co. v. Despain*, 77 Kan. 654, 95 Pac. 580; and *Stevens v. Maxwell*, 65 Kan. 835, 70 Pac. 873.)

A recent work covering issues and burden of proof thereon is found in PIK, Chapter 6.00.

The appellant next contends the trial court erred in giving instructions to the jury which were clearly erroneous, inapplicable and prejudicial, particularly instructions No. 5, No. 6 and No. 6a.

Instruction No. 5, quotes the provisions of K. S. A. 16-203.

Instruction No. 6 apparently is an attempt to state the rule of law announced in *Woods v. Curry,* supra.

Instruction No. 6a reads:

"If you find that the $2,065.27 was paid to the defendant as interest by the plaintiff, Vern L. Forney, and that the same was interest on a loan as defined by Instruction Number 5, you shall find for the plaintiff in the amount of $2,065.27 for that item of damages. If you find that the $2,065.27 was usurious interest, then you may assess a penalty against the defendant and double that amount for $4,130.54 total."

On the evidence in this case, 6½% interest for the time of the loan on $13,000 called for the payment of $729.78 interest. The sum of money paid to Gerling over and above the principal and interest of $729.78 (figured at 6½%) was $2,065.27.

In an action *for usurious interest* under Kansas law the figure of $2,065.27 was erroneously computed in that only charges for interest over and above 10% per annum constitute usurious interest, with certain exceptions noted in K. S. A. 16-202 ( *a* ).

The first part of instruction No. 6a refers the jury to instruction No. 5 for a definition of interest. Instruction No. 5 does not define interest, but instead deals with usurious interest or charges, without defining usurious interest or charges.

Instruction No. 6a further informs the jury that, if they should find the interest was usurious, they may assess a penalty against the defendant and double the amount of the usurious interest. This is clearly erroneous in that it is not the law on the evidence presented in this case.

The net result of instruction No. 6a authorizes the jury to assess damages of $2,065.27 if they find this sum to be usurious interest, or double this amount if they find it to be usurious interest. The instruction is clearly erroneous and prejudicial.

By instruction No. 5 (which quoted 16-203, *supra*) double the amount of such excess interest (usurious interest) incorporated into negotiable paper may, after payment, be recovered back by an action against the party originally exacting usury.

In *Young v. Barker*, supra, the court stated:

". . . Further, that plaintiffs have mistakenly construed G. S. 1955 Supp. 16-203 as the basis of their cause of action since that statute gives rise only to a cause of action to those borrowers who are forced to pay excessive charges to a bona fide holder of a *negotiable instrument*, in which event such a borrower may recover back in an action against the party originally exacting the usury, double the amount of the excessive interest or charges incorporated in the negotiable instrument." (pp. 251, 252.) (Emphasis added.)

Further in the opinion the court said:

"It is clear that plaintiff's petition does not state a cause of action under 16-203. That section gives a cause of action to a borrower against the party originally exacting the usury to recover back from such party double the amount of such excess where the instrument has been negotiated to a bona fide endorsee without notice of the alleged usurious charges, and the borrower *has paid the full amount of such charges to the endorsee. . . ."* (p. 254.) (Emphasis added.)

Heretofore it has been stated that the written real estate contract introduced in evidence is not negotiable paper.

It follows that instruction No. 5 and instruction No. 6a are clearly erroneous and prejudicially affected the substantial rights of the appellant in the trial of this action.

While instruction No. 6 is an attempt to state the law in *Woods v. Curry,* supra, it is prejudicial when there is a failure to correlate it with the rule stated in *Lynn v. McCue,* supra. In other words, the jury is entitled to be informed as to the whole law with respect to the evidence on this point and the claims of the respective parties, and not just half of it.

By reason of the foregoing instructions which were clearly erroneous and prejudicial, and the failure of the trial court to give any instruction on the second cause of action, the appellant was denied a fair trial.

Accordingly, the judgment of the lower court is reversed with directions to grant a new trial.