(6 P.3d 424)

No. 82,140

SHANNON D. BELTZ and TINA BELTZ, *Appellees,* v. RAYMOND H. DINGS, *Appellant.*

Opinion filed May 12, 2000.

*Edgar Wm. Dwire* and *Warren G. Jones,* of Malone, Dwire and Jones, of Wichita, for appellant.

*Ted E. Knopp,* of Ted E. Knopp, Chartered, of Wichita, for appellees.

Before LEWIS, P.J., MARQUARDT, J., and JOHN P. BENNETT, District Judge, assigned.

MARQUARDT, J.: Raymond H. Dings appeals several adverse judgments and the award of attorney fees to Shannon D. and Tina Beltz.

In 1992, Shannon and Tina Beltz responded to a newspaper advertisement for the sale of a 5-acre mobile home site in rural Sedgwick County. In May 1992, the Beltzes and Dings signed a real estate purchase contract for deed for "Tract 3, Cedar acres Development, E ½, SE ¼, Sec. 24, Twp. 28S, Rge. 2E." The contract included an interest rate of 1 percent per month on the unpaid balance.

The Beltzes never discussed with Dings the form of deed they would receive at closing. They expected to receive title to tract 3 as it was shown on the tract map that Dings had shown them prior to their purchase of the land.

In 1997, litigation involving Dings and residents of Cedar Acres II alerted the Beltzes that there might be a problem with the legal description in the deed they were to receive and the interest rate they were being charged. The Beltzes stated that if they had known at the time they signed the contract that the land would be conveyed at closing by a metes and bounds description, they would have been put on notice that a surveyor's assistance was needed. The Beltzes now believe that the value of their land was diminished by at least $2,000 by the failure to plat the property. They also discovered that it would cost approximately $15,000 to plat all 16 lots which were under development.

Dings maintains that the law does not require him to plat the Beltzes' property. The Beltzes' land was classified as agricultural at the time of purchase and was reclassified after the Beltzes moved a manufactured home onto the property. Dings maintains that the contract and the tract map are sufficient to identify the property and for the Beltzes to secure title insurance at closing. Dings had no knowledge of the Kansas usury laws at the time he signed the contract with the Beltzes.

In January 1998, the Beltzes filed a petition asking for a full accounting and demanding assurance of performance. They alleged violations of the Kansas Consumer Protection Act (KCPA) and state usury laws. Dings filed a motion to dismiss, arguing that

the Beltzes' petition was barred by the various statutes of limitation. Dings' motion was denied. The Beltzes filed an amended petition which added a request for declaratory judgment.

In May 1998, while this litigation was pending, the Beltzes received a letter from the Rose Hill State Bank (Bank) which told them that their payments were to be made to a trust at the Bank of which Dings was trustee. The letter contained an Acknowledgement of Trust (Acknowledgement), which referenced K.S.A. 16-207(h), a usury statute. The Acknowledgement classified the land as agricultural. The parties waived a jury trial. The case was submitted to the trial court on stipulations and testimony from a few witnesses.

The trial court found that the contract required Dings to properly plat the property. The trial court also found that Dings committed common-law usury and violated the KCPA. Dings was given 12 months to plat the Beltzes' property. The Beltzes were awarded $2,000 as a civil penalty under the KCPA. However, the penalty would be reduced to $250 if Dings completed all court-ordered obligations within 1 year. The Beltzes were awarded attorney fees of $10,471 for their KCPA claims, plus costs of $66.50. The Beltzes were not awarded attorney fees for their usury claim.

Dings appeals. The Beltzes filed a timely notice of cross-appeal; however, they did not brief their cross-appeal.

## A. Admissibility of the Contract

At trial, the Beltzes sought to admit a copy of the contract into evidence. Dings objected. The objection was overruled. On appeal, Dings claims that K.S.A. 79-3101 and K.S.A. 79-3107 require that a contract for deed be filed with the register of deeds before it may be entered into evidence. Dings claims that the trial court erred in admitting the contract into evidence.

K.S.A. 79-3107 applies to mortgage registration and is inapplicable to an action where an enforcement of the contract is not sought or rendered. The Beltzes sought a declaratory judgment and other similar remedies but did not seek enforcement of the contract. Thus, K.S.A. 79-3107 does not apply to the facts of this case. See *Snider v. Marple*, 168 Kan. 459, 466, 213 P.2d 984 (1950).

Notwithstanding his objection, Dings submitted defense exhibit "T," which included a copy of the contract. A party may not invite error and then complain of that error on appeal. *Hawkinson v. Bennett*, 265 Kan. 564, 590, 962 P.2d 445 (1998). We find no error in the trial court's decision to admit the Beltzes' copy of the contract.

### B. Statutes of Limitation

Dings maintains that the various statutes of limitation bar the Beltzes' claims because the contract was signed in 1992. Dings argues that the contract claim is governed by a 5-year statute of limitations, KCPA claims are governed by a 3-year statute of limitations, and usury claims are governed by a 1-year statute of limitations.

The interpretation and application of a statute of limitations is a question of law for which an appellate court's review is unlimited. Likewise, the court's review of conclusions of law is unlimited. *Brown v. State*, 261 Kan. 6, 8, 927 P.2d 938 (1996).

### 1. Breach of Contract

The Beltzes and Dings' contract is for a term of 30 years. At the end of that time period, Dings is required to deliver a warranty deed to the Beltzes, provided that they fulfill all of their contractual obligations. While the Beltzes are making payments, Dings has the option to cancel the contract and repossess the property. The question in this case is whether the contract was complete on the day it was signed, or whether it is a continuing contract that spans the 30 years during which payments are to be made. The Kansas Supreme Court has not ruled on this issue in the context of contracts for the purchase of real estate.

In the case of *In re Estate of Moe*, 240 Kan. 242, 729 P.2d 447 (1986), an employer had promised to give an employee property if the employee continuously served the employer until the employer's death. The Kansas Supreme Court held that the oral contract was continuous until the death of the employer. Under these facts, the statute of limitations does not begin to run until the services have ended.

Also, in *In re Estate of Ray*, 180 Kan. 634, 306 P.2d 190 (1957), an employee and employer orally contracted that the employee would provide services to the employer in consideration for the employer's promise to leave certain real property to the employee upon the employer's death. Prior to the employer's death, the property was conveyed to a third party. The Kansas Supreme Court held that the statute of limitations did not run until the contract had been fully performed by the employee.

We find the issue currently before this court analogous to the *Moe* and *Ray* cases. The Beltz-Dings contract is a continuing contract. It is not complete until the Beltzes make their last payment and receive the deed. The statute of limitations does not begin to run until the Beltzes make their last payment and receive the deed. The trial court did not err on this issue.

## 2. KCPA Claims

Dings claims that K.S.A. 60-512 requires that a KCPA claim must be brought within 3 years. He argues that the Beltzes' claims are barred because their contract was signed in 1992 and the Beltzes' action was not filed until March 1998. The Kansas Supreme Court in *Alexander v. Certified Master Builders Corp.*, No. 83,604, filed March 10, 2000, held that the 3-year statute of limitations applies to actions filed under the KCPA where damages and civil penalties are requested.

The Beltzes asked for damages as well as civil penalties; therefore, the 3-year statute of limitations applies to this cause of action. The trial court correctly found that Dings is responsible for KCPA violations dating back to March 1995.

## 3. Usury

Dings claims that because there is no statute of limitations in K.S.A. 16-207 (Ensley 1988), this court is required to apply K.S.A. 60-514, which requires that causes of action for usury must be brought within 1 year of the alleged violation.

The Beltzes have continued to make payments on the contract, and are ready, willing, and able to complete the conditions of the

contract. A cause of action for usury accrues with each payment made on a continuing contract.

### C. Usury Law Applicability

Dings claims that K.S.A. 16-207 (Ensley 1988) does not apply to the facts of this case because he did not enter into a loan agreement. He argues that a contract for deed is merely a delivery of possession conditioned upon the payment of a price to consummate the transaction. In the alternative, Dings claims that the exceptions found at 16-207(f) and (h) apply to his contract with the Beltzes.

"The maximum rate of interest per annum for notes secured by all real estate mortgages *and contracts for deed* to real estate executed on or after the effective date of this act shall be at an amount equal to 1 1/2 percentage points above the yield of thirty-year fixed rate conventional home mortgages . . . ." (Emphasis added.) K.S.A. 16-207(b) (Ensley 1988).

K.S.A. 16-207(b) (Ensley 1988) clearly references contracts for deed. We are puzzled as to how Dings failed to notice this provision of the statute. Absent the application of a statutory exception, 16-207(b) applies to contracts for deed, and subjects the Beltz-Dings contract to the scrutiny of state usury laws.

Dings claims that the exception found at 16-207(f) applies to his contract. K.S.A. 16-207(f) (Ensley 1988) states: "The interest rates prescribed in subsections (a) and (b) . . . shall not apply to a business or agricultural loan. For the purpose of this section unless a loan is made primarily for personal, family or household purposes, the loan shall be considered a business or agricultural loan."

The Beltzes purchased their lot from Dings in order to move their mobile home onto the land. Dings knew that the property would be used as a home site and would not be used for business or agricultural purposes. The fact that the land had been classified as agricultural prior to the Beltzes' purchasing the property is immaterial. The statute does not mention the land's classification; it contemplates the purpose for which the land is purchased. Thus, the Beltz-Dings contract does not fall within the exception found at 16-207(f).

Dings also claims that the exception found at 16-207(h) applies, which reads: "The interest rates prescribed in subsections (a) and (b) of this section shall not apply to a note secured by a real estate mortgage or a contract for deed to real estate where the note or contract for deed permits adjustment of the interest rate, the term of the loan or the amortization schedule."

There is no such interest rate adjustment language in the Beltz-Dings contract. The only adjustment in the contract is for taxes. Thus, the 16-207(h) exception does not apply. The trial court correctly found that 16-207(b) applies to the Beltz-Dings contract.

### D. Common-law Usury

The trial court found that Dings committed common-law usury. On appeal, Dings argues that it was error for the trial court to make this finding absent proof that he unlawfully intended to violate the usury law.

The question of usury is a fact question. *Young v. Barker,* 185 Kan. 246, 257, 342 P.2d 150 (1959). In *Young,* the Kansas Supreme Court created a common-law cause of action for usury allowing the plaintiff to recover the amount of interest charged by a lender which is in excess of the statutory rate. See *George v. Capital South Mtg. Investments, Inc.,* 265 Kan. 431, 457, 961 P.2d 32 (1998). The trial court is not required to find that Dings intended to commit usury. The trial court must merely find that Dings collected interest at a rate greater than what is authorized by law. See *Young,* 185 Kan. at 257.

The maximum statutory rate of interest authorized for a contract for deed to real estate is an amount equal to 1½ percentage points above the yield of 30-year fixed-rate conventional mortgages. The Kansas Secretary of State is charged with publishing notice of the maximum interest rate. See K.S.A. 16-207(b) (Ensley 1988). The Beltzes signed the contract in May 1992. The maximum interest rate for that period was 10.33 percent. The Beltzes were charged interest of 1 percent per month. Thus, the interest the Beltzes were paying exceeded the allowable maximum rate by more than 1 1/2 percentage points. See K.S.A. 16-207(b) (Ensley 1988). The trial court correctly found that Dings committed common-law usury.

## E. Sale of Unplatted Land

The trial court found that Dings represented Tract 3, Cedar Acres Development, as platted and part of a uniform development where all boundary lines were precisely drawn. The trial court also found that Dings knew or should have known about requirements for creating a subdivision. The trial court held that Dings' action violated K.S.A. 50-626(b)(1)(A), (b)(1)(B), and (b)(2).

On appeal, Dings claims that the record is insufficient to find him guilty of committing any deceptive acts or practices. Dings maintains that the word "tract" is not synonymous with the word "plat." He claims that the description of the property in the contract should have immediately put the Beltzes on notice that the land was not platted.

Deceptive acts and practices include representations made knowingly, or with reason to know, that characteristics or quantities of property are not factual and oral or written representations made willfully that contain exaggeration, falsehood, innuendo, or ambiguity as to a material fact. K.S.A. 50-626(b).

K.S.A. 19-2633 requires that

"[a]ny person . . . owning land outside the limits of any incorporated city . . . desiring to subdivide any such tract of land, may plat the same and submit the plat thereof, together with an abstract of title to the land so platted, to the board of county commissioners of the county in which such land is situated. The plat shall contain a description of the land as subdivided, giving the name of said subdivision, and the restrictions to which the land or separate tracts thereof are subject."

The Beltz-Dings contract described the Beltzes' land as "Tract 3, Cedar [A]cres Development, E ½, SE ¼, Sec. 24, Twp. 28S, Rge. 2E," which indicated that their land is located within a certain quarter section of land. This description gives no information about where the Beltzes' tract was located within the 80 acres. The Beltzes were given a tract map which showed the measurements of their property; however, there was no metes and bounds description of the exact property they were to receive.

Norman Roelfs surveyed the Beltzes' land and prepared a tract map of the area. Roelfs testified that preparing a tract map is different from preparing a plat. He said that preparing a plat requires

the surveyor to go through subdivision regulations and the planning commission. Roelfs also testified that the creation of a tract map does not create a legal entity. He also testified that the legal description of the property had a discrepancy of approximately 1 foot. The Beltzes were unable to obtain title insurance from Lawyers Title Insurance Corporation because it was unable to locate evidence of a subdivision called Cedar Acres I Development. John Pyron of Security Abstract and Title Company testified that he would insure the Beltzes' property. However, on cross-examination, he admitted that he would not insure property described as "Tract 3, Cedar Acres Development" until the property had gone through the statutory subdivision creation process.

Dings represented that his land was properly subdivided. The name "Cedar Acres Development" implies that the land had been properly subdivided according to the provisions found at K.S.A. 19-2633. The witnesses at trial and the documents submitted to the trial court evidenced that none of the necessary procedures had been followed.

We find there is substantial competent evidence to support the trial court's finding that Dings presented the contract, along with the deceptive subdivision description, to the Beltzes.

### F. Distribution of Acknowledgement of Trust

The trial court found that Dings' "distribution of the Acknowledgment of Trust was an unconscionable and deceptive act or practice made before, during or after a consumer sale. The undisputed testimony is that the Acknowledgment was distributed by and for the Defendant, and purported to take away consumer rights and remedies without any consideration or benefit to the Beltz'" and such "acts constitute unconscionable acts and practices under both 527(b)(1) and (b)(3)." It is obvious from reading the decision that the trial court was referring to K.S.A. 50-627(b)(1) and (b)(3), as there is no K.S.A. 50-527.

On appeal, Dings claims that the record is devoid of any evidence that the Beltzes signed or acted upon the Acknowledgment. Dings also questions whether there is any evidence to prove what the document meant. Dings argues that there is no evidence to

support a conclusion that his actions constituted unconscionable conduct. Dings admits that the letter and Acknowledgment were sent by the Bank for his estate planning purposes.

"The unconscionability of an act or practice is a question for the court. In determining whether an act or practice is unconscionable, the court shall consider circumstances of which the supplier knew or had reason to know, such as, but not limited to the following:

"(1) That the supplier took advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor; [and]

. . . .

"(3) that the consumer was unable to receive a material benefit from the subject of the transaction." K.S.A. 50-627(b)(1) and (3).

The uncontroverted evidence is that the Beltzes had never previously purchased any land, did not know when to order insurance or a survey, and "took comfort from the Tract Map that everything was properly done by professionals." The trial court's finding that the Beltzes were inexperienced, first-time property buyers is supported by the record on appeal. Also, the Beltzes would not be able to receive a material benefit from the Acknowledgment. It does not matter that it was not signed and that Dings did not seek to enforce it.

The trial court ignores the fact that the Bank was responsible for the distribution of the Acknowledgment, not Dings. It is possible, or even probable, that Dings requested the Bank to prepare and send the Acknowledgment; however, there is no evidence in the record on appeal to support such a finding. It is curious that such a document was sent to the Beltzes 5 months after they filed suit against Dings and that it included provisions that would substantially change the original contract. Even though we find that the trial court's finding on this issue is not supported by the evidence, the error is harmless in view of our other rulings in this case.

## G. Breach of Contract

The trial court held that the unambiguous language of the contract required Dings to deliver land described as "Tract 3, Cedar

[A]cres Development," and that Dings breached the contract because he refused to do a metes and bounds plat of the property.

Dings argues that the description of the land in the contract is not a technical term for a platted tract of land. He claims that there is no evidence that he breached the contract because he will be able to convey marketable title to the contract.

Regardless of the construction given a written contract by the trial court, an appellate court may construe a written contract and determine its legal effect. *City of Topeka v. Watertower Place Dev. Group*, 265 Kan. 148, 152, 959 P.2d 894 (1998). If the language of a written instrument is clear and can be carried out as written, there is no room for rules of construction. *In re Cherokee County Revenue Bonds*, 262 Kan. 941, 953, 946 P.2d 83 (1997).

The Beltz-Dings contract is unambiguous. Dings contracted to deliver "Tract 3, Cedar [A]cres Development" to the Beltzes. We have thoroughly reviewed the fact that Dings cannot deliver land that fits this description because there is no evidence that Cedar Acres Development exists. Dings continues to maintain that he is not required to plat the Beltzes' land.

Because Dings cannot deliver the land until it is properly platted and he has complied with K.S.A. 19-2633, he has breached the contract. The finding of the trial court was correct.

### H. Award of Attorney Fees on the Usury Claim

Dings claims that the Beltzes are asking this court to allow them attorney fees for their usury claim. He urges this court to find that the Beltzes are not entitled to attorney fees. The Beltzes' cross-appeal was not briefed for this court. Where a cross-appellant fails to brief an issue, that issue is deemed waived or abandoned. *Crawford v. Board of Johnson County Comm'rs*, 13 Kan. App. 2d 592, 594, 776 P.2d 832 (1989).

Affirmed.