No. 42,274

WALTER HENDERSON, *Appellant*, v. KANSAS POWER & LIGHT COMPANY, a Corporation, *Appellee*.

(362 P. 2d 60)

Opinion filed May 13, 1961.

*Wendell L. Garlinghouse,* of Topeka, argued the cause, and *Warren W. Shaw, William Hergenreter, Carl Quarnstrom* and *Elwaine F. Pomeroy,* all of Topeka, were with him on the briefs for the appellant.

*William B. McElhenny,* of Topeka, argued the cause, and *M. F. Cosgrove, Robert E. Russell, Willard N. Van Slyck, Jr., O. R. Stites, Jr.,* and *James L. Grimes, Jr.,* all of Topeka, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRICE, J.: The only question in this case is whether the verdict of the jury is so grossly inadequate as to compel the granting of a new trial—and, if so, should the new trial be limited to the question of damages only—or be granted generally as to all issues.

For reasons hereafter stated, the court is of the opinion that fundamental justice requires the granting of a new trial—and that it be generally as to all issues.

The action was to recover damages for severe and permanent injuries sustained by plaintiff as the result of burns and electrical shock when the television antenna and mast, which he was helping to install, came in contact with defendant company's high-voltage transmission line on September 26, 1954. Recovery was sought in the amount of $150,750.

Defendant filed a demurrer to the petition on the grounds it failed to state facts sufficient to constitute a cause of action, and that it disclosed contributory negligence as a matter of law. The demurrer

was overruled, and defendant appealed. The ruling was affirmed (*Henderson v. Kansas Power & Light Co.*, 181 Kan. 625, 313 P. 2d 257).

Issues were joined and the case went to trial. At the conclusion of plaintiff's evidence the defendant's demurrer thereto was sustained on the grounds it was insufficient to establish that any of the alleged acts on the part of defendant were in fact negligent and that it did not establish that such acts were the cause of plaintiff's injuries. Plaintiff appealed. The ruling was reversed (*Henderson v. Kansas Power & Light Co.*, 184 Kan. 691, 339 P. 2d 702).

The allegations of the pleadings, and the evidence as to the alleged negligence on the part of defendant and the circumstances of the incident, introduced at the first trial, are summarized, respectively, in our two former opinions and will not be repeated.

At the conclusion of the second trial the jury returned a general verdict in favor of plaintiff in the sum of $5,000, and made special findings as follow:

"1. Do you find from the evidence that defendant was guilty of negligence?

"A. Yes.

"2. If your answer to question number one was in the affirmative then state of what such negligence consisted?

"A. By maintaining electric power lines over private property.

"3. Do you find the plaintiff guilty of negligence that contributed to his injuries?

"A. No.

"4. If your answer to question three was in the affirmative then state of what said negligence consisted?

"A.

"5. Did the plaintiff, Walter Henderson, see and know of the presence of defendant's transmission lines at 609 Lake Street before the accident?

"A. Yes.

"6. Do you find that the transmission lines of the defendant were located and maintained at a proper height?

"A. Yes, but over private property.

"7. Do you find that the defendant's lines were insulated?

"A. Bare wire but insulated by air.

"8. Do you find from the evidence that the defendant's lines cross over private property?

"A. Yes.

"9. If you answer the above in the affirmative did the owner of said private property:

"(*a*) Know that said lines cross his property?

"A. Yes.

"(*b*) Consent to the maintenance of said lines across his property?

"A. No."

Defendant filed a motion for judgment notwithstanding the verdict.

Plaintiff filed a motion for a new trial generally, and one day later filed a motion for a new trial limited to the question of damages only.

All three motions were overruled, and judgment was entered on the verdict and special findings. Plaintiff has appealed from the orders overruling his motions for a new trial. Defendant has not cross-appealed.

Although several matters are discussed in the brief, counsel for plaintiff, upon oral argument of this appeal, conceded that he was making no complaint as to rulings on evidence or as to instructions given or refused. His sole contention is that the verdict in the sum of $5,000 is, under the undisputed evidence relating to the severity and extent of plaintiff's personal injuries, so inadequate that in the very nature of things it must be deemed to have been given under the influence of passion and prejudice, and thus compels the granting of a new trial. Putting it very bluntly, it is contended that if plaintiff is entitled to recover anything—and the jury found that he is—he is entitled to recover more than $5,000, and, all questions of negligence having been settled by the jury's findings—the new trial should be limited solely to the question of damages.

Understanding of our decision requires a rather detailed statement as to plaintiff's injuries.

The events of the tragic Sunday afternoon in question, September 26, 1954, have been summarized in the last-mentioned previous opinion of this court, above. Immediately following the explosion several persons in the neighborhood saw plaintiff and his companions lying on the ground. The grass and their clothing, as well as their bodies, were on fire, and they were "all black looking." There was a sickening odor of burning flesh. Plaintiff was the only one of the three men who was moving, and he was "moaning and jerking as if in a convulsion." He was taken to Stormont-Vail Hospital in Topeka and was placed, screaming and writhing, in a perambulator and fell off of it to the floor. His mouth was frothy and parts of his clothing were entirely burned, exposing the raw, red flesh burns on his body. Parts of his flesh were described as being "burned to a crisp," and his eyes appeared to be "sticking out of his head."

In the emergency room at the hospital he was given intravenous

anesthetic because "he was so wild when he came in they couldn't control him." He also was given plasma and oxygen by an anesthesia machine because of respiratory paralysis, being unable to breathe for himself. He had severe burns on his entire face, head, both arms, with burns from the fingertips to the shoulders, as well as severe burns on his chest, back and legs. On the bottom of his feet was a large dark area which was charred completely. He was removed from the emergency room to surgery where his clothing could be completely removed and as much destroyed tissue as could be removed at that time was removed. Pressure Vaseline gauze dressings were applied. He was described as appearing to have third degree burns over a large portion of his body, and the attending physicians "thought he was actually going to die at that time." He lost considerable fluid, his blood pressure went down to a low level, and he was given large quantities of intravenous glucose and plasma, and some blood. Two days later, and while still unconscious, he was removed to Winter Veterans Hospital in Topeka. His whole body felt "as if he was on fire." The doctors continued to give him blood plasma and glucose intravenously.

About ten days later he was transferred by ambulance to the Veterans Hospital at Kansas City, where he was taken into surgery and all dressings were removed. He had first and second degree burns involving both arms and hands; first, second and third degree burns of the back and parts of his chest; also first, second and third degree burns of both feet, primarily at the heels, and also of the toes of his left foot. Later, dead tissue was removed from his body and he was completely bandaged so that "irrigating" could be accomplished by means of a salt water solution injected through catheters, all of which was very painful to the extent that he was quieted only through sedation. He could not turn himself over in bed; was completely helpless and had to be fed by others. Later, skin grafts were made—each time under a general anesthesia. It was necessary to amputate one of his toes. Skin grafts were applied to areas of both heels, back and left side of thorax; also to his left side, left shoulder, left side of neck, behind one ear, and to both hands and arms.

By December, 1954, plaintiff was able to get out of bed for the first time, but was so weak he could stay up for only forty-five minutes. He had no control over his balance and nurses had to assist him to walk. He still had open sores and the tissue on his instep

turned blue and commenced to separate. All told, he had eight or nine general anesthesias and underwent seven different operations. Prior to Christmas, 1954, he was released from the Kansas City hospital to go home on leave. While at home he became nauseated and sick, and his Topeka family doctor was called. It was found that he had yellow jaundice which, in the opinion of the doctor, was a result of "reaction" to the blood transfusions. He was returned to the Kansas City hospital and ordered back to bed for six weeks.

At the time of the accident in question plaintiff was thirty-three years of age and was employed by the City Water Department of Topeka at a salary of $255 per month. He returned to work at the same job about March 1, 1955, having been incapacitated for a little over five months. Since that date he has received salary increases amounting to $70 per month.

Immediately prior to the last trial of this case, which was held in April, 1960, plaintiff was examined by his Topeka doctor. That examination disclosed that at that time plaintiff had a scar tissue which forms a webb under his arm and prevents him from lifting the arm higher than shoulder level. He was unable to do any overhead work. He had a scarring of the left angle of the jaw bone which interfered with his ability to open and close his mouth. His left ear was bound to his head by scar tissue, and he had sustained a loss of fifty per cent of the motion of his left arm. There were large scars on his left chest and the entire left side of his back. A scar on his right forearm extending down to the thumb was tender and interfered with the motion of the thumb and hand. The scar resulting from the amputation of one of his toes was tender and interfered with his walking. There was a tenderness in the upper right quadrant over the liver region which, in the doctor's opinion, meant that there was still activity of disease of the liver resulting from the yellow jaundice following the many blood transfusions, and further indicated permanent liver damage. The examination also disclosed extreme tenderness on many parts of his body as the result of scars, and further disclosed definite reactions of parts of the body to changes in weather temperatures because of a lack of normal blood supply in the skin where grafts had been made. As a result of this examination the doctor gave him a rating of forty to fifty per cent total permanent disability.

Photographs of plaintiff, some in color, were taken while he was

in the hospitals. They were introduced in evidence and are included in the record in this appeal. They speak for themselves!

The undisputed evidence is that plaintiff's local medical bills totalled $287.80, and that he received a hospital bill from the Veterans Administration totalling $2,906.

In his brief plaintiff states that from the evidence and entire record it is quite clear the jury dealt candidly with the evidence in finding negligence of defendant and the absence of contributory negligence on his part, but that it is equally clear it was influenced by prejudice in awarding damages. He thus places himself in the unique position of arguing that as to the amount of damages the jury was prejudiced in favor of defendant, a large corporation—a very novel situation in a case of this kind, to say the least, for ordinarily in such cases the complaint is by a defendant that the verdict is excessive.

In considering the question presented, several elementary and firmly-established rules are to be kept in mind. One is that ordinarily the granting or denial of a new trial rests in the sound discretion of the trial court and a ruling thereon will not be disturbed, absent a showing of abuse of discretion or other manifest error. Another is that until the contrary is shown, a jury is presumed to have acted fairly, reasonably, intelligently and in harmony with the evidence. Still another is that the same yardstick must be applied where the claim is that a verdict is inadequate as in a case where a verdict is claimed to be excessive, and before a new trial will be granted because of the size of a verdict it must appear to be so excessive or inadequate, as the case may be, as to have been given under the influence of passion and prejudice. A still further rule is that a new trial can be granted on one of several issues, such as plaintiff seeks here—on the question of damages only (G. S. 1949, 60-3004). It is equally well settled that in the determination of matters of this kind, involving personal injuries, there is no precise formula by which courts can be guided, and that each case must largely be governed by its own facts as established by the evidence.

By the provisions of § 307 of our early code of civil procedure (General Statutes 1901, § 4755) a new trial could not be granted on account of the inadequacy of damages in an action for an injury to the person. In discussing the effect of such provision, it was said in *Railway Co. v. O'Neill*, 68 Kan. 252, 74 Pac. 1105, (1904):

". . . The rule may be hard, and in some cases may be productive of injustice, but that is a consideration to be addressed to the lawmakers and not to the law interpreters." (pp. 256, 257.)

That provision was omitted in the 1909 revision of the code, and, in commenting on such fact, it was said in *Sundgren v. Stevens,* 86 Kan. 154, 119 Pac. 322, 39 L. R. A. (NS) 487, (1911), in which this court ordered a new trial on the ground of inadequacy of damages:

"The fact that the provision of the former code forbidding a new trial for smallness of damages was omitted from the present civil code is an indication that the legislature deemed inadequacy a proper ground for a new trial, . . ." (p. 161.)

The general rule is, in the absence of a statute to the contrary, that inadequacy of damages constitutes a ground for the granting of a new trial when a verdict is so inadequate as to indicate passion and prejudice. (66 C. J. S., New Trial, § 77, p. 252; 15 Am. Jur., Damages, § 231, p. 663; 39 Am. Jur., New Trial, §§ 145, 147, pp. 151, 153.) See also the annotation "Damages—Adequacy—Personal Injuries," 16 A. L. R. 2d 393, § 2, at page 400.

The principle that a new trial can be granted because of inadequacy of damages as announced in the Sundgren case, above, has been followed many times. Although factually dissimilar to the present case, we mention a few of the decisions in which this court has ordered a new trial on such ground: *Bracken v. Champlin,* 114 Kan. 882, 220 Pac. 1027; *Russell v. Newman,* 116 Kan. 268, 226 Pac. 752; *Burt v. Carr,* 120 Kan. 719, 244 Pac. 1044, and *Daniels v. Hansen,* 128 Kan. 251, 276 Pac. 819.

We are well aware of the fact this is not a "liquidated damages" case such as where recovery—if any—should be in a certain amount. We also are aware of the fact that ordinarily the assessment of damages in personal injury cases is exclusively the province of the jury (*Domann v. Pence,* 183 Kan. 135, 325 P. 2d 321), and that courts should exercise utmost care and caution in granting a new trial on the ground of inadequacy of a verdict. Further, we also are aware there is no showing here of any overt acts of misconduct on the part of the jury and that the only "misconduct"—if any—is that passion and prejudice are inherent in the amount of the verdict when viewed in the light of the evidence as to the severity, duration, extent and permanency of plaintiff's injuries. Notwithstanding the fact the matter was passed upon by a very able judge of long experience—

we feel compelled to hold that the ends of justice require that a new trial be granted because of the failure of the verdict fairly to compensate plaintiff for his personal injuries as shown by the undisputed evidence.

There remains a further question. Should the new trial be generally as to all issues—or—as vigorously contended for by plaintiff—should it be limited to the question of damages only?

Concededly, negligence and damages are legally separable issues, and on many occasions this court has granted new trials on the issue of damages alone. We believe, however, that the rule stated in the annotation "New Trial As To Damages Only," 29 A. L. R. 2d 1199, where at § 10, p. 1214, it is said:

"A new trial as to damages alone should not be granted where there is ground for a strong suspicion that the jury awarded inadequate damages to the plaintiff as a result of a compromise involving the question of liability. Or, as is said in 98 A. L. R. 944, if from the inadequacy of the damages awarded, in view of the evidence on the subject, or the conflict of the evidence upon the question of liability, or from other circumstances, the plain inference may be drawn that the verdict is the result of a compromise, such error taints the entire verdict, and a new trial should be ordered upon all issues."

is applicable to the situation here presented. On the general subject see also *Paul v. Western Distributing Co.*, 142 Kan. 816, 52 P. 2d 379, and *Parker v. Allen,* 171 Kan. 360, 233 P. 2d 514.

The judgment is therefore reversed with directions to grant a new trial generally as to all issues.

FATZER, J., concurring specially: As the court's opinion indicates, this is the third appearance of this case. The first appeal concerned the sufficiency of the petition to allege a cause of action, and the second involved the sufficiency of plaintiff's evidence to prove allegations of the defendant's negligence and plaintiff's freedom of contributory negligence as a matter of law. Following the second appeal, the case was tried by a jury and the defendant was found to be negligent as charged and the plaintiff was freed of contributory negligence. The claim is now made that the verdict is so grossly inadequate in view of the severity, duration, extent and permanency of the plaintiff's injuries as to indicate passion and prejudice on the part of the jury. In my judgment the record clearly discloses the verdict is grossly inadequate and I concur in the court's opinion granting the plaintiff a new trial. However, in view of the extended character of this litigation and since the defendant's liability has

been determined, I would not grant a new trial generally, but would limit it solely to the amount of plaintiff's damages.

WERTZ, J., joins in the foregoing specially concurring opinion.