No. 48,286

STATE OF KANSAS, *Appellee,* v. GEORGE C. DUMLER, *Appellant.*

(559 P. 2d 798)

Opinion filed January 22, 1977.

*Michael S. Holland,* of Russell, argued the cause, and was on the brief for the appellant.

*Dan D. Boyer,* assistant county attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *James L. Sweet,* county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This case involves the construction and constitutional validity of certain Kansas statutes which provide for a maximum 55 mile per hour speed limit on Kansas highways. They were enacted by the legislature during the "energy crisis" of 1974. The defendant-appellant, George C. Dumler, was charged with driving 90 miles per hour in a 55 mile per hour speed zone. He was convicted in Saline county magistrate court and appealed to the district court. In the district court the defendant moved to dismiss the charge on the grounds that the statutes involved were unconstitutional or, in the alternative, that under established rules of statutory construction the legislature had suspended all statutes

pertaining to speed limits on public highways. The defendant's motion to dismiss was denied. He was found guilty of speeding as charged and has appealed to this court.

The first point raised by the defendant on this appeal is that the trial court erred when it refused to sustain the defendant's motion to dismiss because by the enactment of K. S. A. 1974 Supp. 8-1340 the legislature suspended the operation of all Kansas statutes prescribing a maximum speed on the public highways. The question has arisen because of certain unusual circumstances which existed during the 1974 session of the Kansas legislature and which must be considered in order to determine the issue raised by the defendant. Prior to 1974 maximum speed limits for automobile travel in Kansas were controlled by K. S. A. 1973 Supp. 8-532 and K. S. A. 8-533. 8-532 established maximum speed limits at 70 miles per hour during the daytime, 60 miles per hour during the nighttime on roads and highways outside cities, excepting only interstate highways where the maximum speed limit was set at 75 miles per hour in the daytime and 70 miles per hour at night. This statute also authorized the state highway commission, a board of county commissioners, or a township board of highway commissioners to adjust speed limits up and down when justified on the basis of an engineering and traffic investigation. 8-533 authorized a city governing body to reduce and increase allowable speed limits in cities under similar circumstances. These statutes were enacted as a part of the uniform act regulating traffic on highways. The 1974 legislature completely revised the uniform act in Laws of 1974, Chapter 33. (K. S. A. 1974 Supp. 8-1401 through 8-2204.) K. S. A. 1973 Supp. 8-532 and K. S. A. 8-533 (Corrick) were repealed and replaced by 8-1557, 8-1558, 8-1559, and 8-1560 of the new highway code. 8-1558 of the new act set the same maximum speed limits up to 75 miles per hour on interstate highways.

The problem in this case arose because of the energy crisis of 1974. In order to conserve gasoline and petroleum products the Congress of the United States enacted 23 U. S. C. A. § 154 (a) which provided in pertinent part as follows:

"The Secretary of Transportation shall not approve any project . . . in any State which has . . . a maximum speed limit on any public highway within its jurisdiction in excess of fifty-five miles per hour, . . ."

The effect of this statute was to deny federal highway funds to any state having a maximum highway speed limit in excess of 55 miles per hour. The Kansas legislature in response to this federal en-

actment determined that the provisions of 8-1557 through 8-1560 which authorized maximum speed limits in excess of 55 miles per hour should be suspended during the continuation of the energy crisis and until such time as Congress should remove such restrictions on maximum speed limits as a condition of receiving federal highway funds. To achieve this result the legislature enacted a supplemental act, Chapters 29 and 30, Laws of 1974. (K. S. A. 1974 Supp. 8-1334 through 8-1341.) A review of these statutes would be helpful. K. S. A. 1974 Supp. 8-1336 established maximum speed limits throughout the state, with an absolute maximum speed of 55 miles per hour in all locations. In pertinent part 8-1336 reads as follows:

"**8-1336. Maximum speed limits.** "(*a*) Except when a special hazard exists that requires lower speed for compliance with section 2, the limits specified in this section or established as hereinafter authorized shall be maximum lawful speeds, and no person shall drive a vehicle at a speed in excess of such maximum limits:

. . . . . . . . . . . . . . .

"(3) Fifty-five (55) miles per hour in all other locations. In the event that the Congress of the United States shall establish a maximum speed limit greater or less than the limit prescribed by this paragraph, the state highway commission may adopt a resolution, subject to the approval of the governor, establishing such speed limit as the maximum speed limit of this state. . . ."

8-1337 authorized the state highway commission to vary the maximum speed, provided that the commission not establish a maximum speed limit in excess of 55 miles per hour in accordance with 8-1336 (*a*) (3). 8-1338 gives similar power to local authorities with the same limitations. In 1975 the statutes were amended to substitute the newly created secretary of transportation for the state highway commission.

8-1340 is the section which provided for the expiration of the supplemental act and the suspension of the highway code's speed limits until the supplemental act expired. K. S. A. 1974 Supp. 8-1340 provided:

"**8-1340. Expiration of act; suspension of speed limit statutes until expiration.** The provisions of this act shall expire on the date when the Congress of the United States shall remove all restrictions on maximum speed limits, and until said date the operation of sections 8-1557, 8-1558, 8-1559 and 8-1560 of 1973 Senate bill No. 587 and any other statute of this state establishing or authorizing the state highway commission or local authorities to establish maximum speed limits are hereby suspended."

The supplemental act was enacted as Chapter 29, Laws of 1974.

Section 7 of Chapter 29 suspended the operation of the former statutes, K. S. A. 8-533 and K. S. A. 1973 Supp. 8-532, and

"any other statute of this state establishing or authorizing the state highway commission or local authorities to establish maximum speed limits."

Following the passage of Chapter 29, the legislature adopted Chapter 33, Laws of 1974, the revised uniform act regulating traffic on highways. Chapter 33 repealed 8-532 and 8-533 and replaced them with 8-1557, 8-1558, 8-1559 and 8-1560. In order to correct Section 7 of Chapter 29 the legislature enacted Chapter 30 which simply amended Section 7 of Chapter 29 to replace the words "8-533 and 8-532" with the words "8-1557, 8-1558, 8-1559 and 8-1560." Otherwise Section 7 of Chapter 29 remained as it was originally enacted.

In construing these statutes we must first consider certain basic rules of statutory construction established by this court. The fundamental rule of statutory construction, to which all others are subordinate, is that the purpose and intent of the legislature governs when that intent can be ascertained from the statute. (*Farm & City Ins. Co. v. American Standard Ins. Co.*, 220 Kan 325, 552 P. 2d 1363.) This intent is to be determined by a general consideration of the whole act. It is the duty of the court, so far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. (*Fleming Company v. McDonald*, 212 Kan. 11, 16, 509 P. 2d 1162.) When the interpretation of one section of an act according to the exact and literal import of its words would contravene the manifest purpose of the legislature, the entire act should be construed according to its spirit and reason, disregarding so far as may be necessary the strict letter of the law. (*Gnadt v. Durr*, 208 Kan. 783, 494 P. 2d 1219; *Claflin v. Walsh*, 212 Kan. 1, 509 P. 2d 1130.)

We must apply these rules of statutory construction to the statutes in question. 8-1336 and 8-1340 were enacted by the legislature at the same time as part of the same act. The act was entitled "An act relating to and supplementing the uniform act regulating traffic on highways; establishing speed limits on highways; and suspending the operation of certain statutes." (Laws of 1974, Ch. 29, 30.) These two statutes must be construed *in pari materia*. The defendant's contention is that the clause suspending "operation of any other statute" in 8-1340 includes 8-1336. In our judgment such a contention cannot be sustained. A more logical interpretation would be that this clause refers to any other statute *outside* of this

particular act. The obvious purpose and intent of the legislature in enacting the supplemental act was to change the maximum speed limit on Kansas highways from 75 miles per hour to 55 miles per hour. This change had to be made in order for the state of Kansas to be eligible to receive federal highway funds. The defendant would have us interpret the act as though one section of it was suspended upon enactment. This simply is not a consistent, harmonious, or sensible construction. Defendant's position would serve to defeat one of the purposes of the act stated in the title—to establish speed limits on highways. A second purpose was to suspend the operation of certain statutes. 8-1340 specifically lists four statutes (8-1557 through 8-1560) which are suspended and then declares that any other statute establishing or authorizing the state highway commission or local authorities to establish maximum speed limits is also suspended. The only reasonable interpretation which fulfills both legislative purposes is that 8-1340 pertains only to statutes outside the supplemental act itself.

Although the uniform act which regulates traffic on highways and the supplemental act are not strictly penal statutes in the usual sense, our construction of the statute does not conflict with the rule of strict construction to be applied to penal statutes. The interpretation which we have adopted does not add or subtract words, nor does it attach anything other than the ordinary English meaning to the wording. The purpose of the rule which requires strict construction of penal statutes is to establish a rule of certainty regarding individual conduct. There can be no uncertainty as to the meaning of the statute now before us. The establishment of the 55 miles per hour speed limit was one of the most publicized and controversial statutory changes of recent years. There is no complaint raised by defendant that the statute, or intent of the legislature, is so vague as to make it impossible for a citizen to know how to conduct himself in order to be in conformity with the law. Suffice it to say, the supplemental act created a valid 55 miles per hour maximum highway speed limit in Kansas. We reject the defendant's first point on the appeal as being without merit.

The defendant's second point on the appeal is that the district court erred in its refusal to sustain the defendant's motion to dismiss because K. S. A. 1974 Supp. 8-1336 through 8-1340 are unconstitutional as an unlawful delegation and surrender of the legislative power of the state of Kansas to the Congress of the United States. Simply stated, it is the position of the defendant that by these

statutes the legislature has made the maximum highway speed limit in Kansas contingent upon future actions of the United States Congress because during the interim between passage and expiration of the supplemental act, it is the Congress of the United States which dictates the Kansas maximum speed limit and that Congress will continue to do so until it elects to return the power to the Kansas legislature, if ever. In this regard it is important to note that K. S. A. 1974 Supp. 8-1336 clearly and unequivocally fixes the maximum speed limit on the highways of the state at 55 miles per hour subject to a condition that the maximum speed limit may be altered by the state highway commission or local authorities upon the happening of a contingency, that being when Congress changes the speed limitation required for a state to qualify for federal funds for highway purposes.

The defendant is correct in his general statement of the law that legislative power to make a law cannot be delegated by the Kansas legislature to the Congress of the United States. It is equally true, however, that the legislature may make a law to become operative on the happening of a certain contingency or future event. A comparable situation was before this court in *City of Pittsburg v. Robb*, 143 Kan. 1, 53 P. 2d 203. Because of the economic depression in the 30's Congress enacted the national industrial recovery act which created a federal emergency administration of public works which, among other things, was authorized to aid cities in financing the construction and improvement of publicly owned facilities and instrumentalities. In order that Kansas municipalities might take advantage of this federal act, a special session of the legislature was called by the governor in 1933. At this special session the legislature passed legislation authorizing municipalities to issue and sell special revenue bonds to pay the cost of installing and improving publicly owned utilities. One section of the Kansas act provided:

"'This act shall become ineffective with the expiration of the national industrial act and amendments thereto.'"

George Robb, the state auditor, refused to register the revenue bonds of the city of Pittsburg, contending that the Kansas act was unconstitutional as delegating legislative power to the United States Congress. The city of Pittsburg filed an original action in mandamus in the supreme court to compel the state auditor to register the bonds. The defendant's position was that the continuing existence of a law of this state depended, not upon the action of the Kansas legislature, but on the action of Congress or

action of the President, and consequently the Kansas legislature had delegated to Congress and to the President legislative power. This court granted mandamus and upheld the validity of the Kansas statute. In the opinion the court stated that the effectiveness of a statute may be made to depend on the coming into existence of some specific future fact, event, or condition capable of identification or ascertainment. However, in such cases the action must be complete in itself as an expression of the legislative will and must itself determine the propriety and expediency of the measure. These requirements being satisfied, a statute may provide that its operation shall be conditional. In *City of Pittsburg v. Robb*, supra, the court relied upon *Phoenix Ins. Co. v. Welch*, 29 Kan. 672. There the legislature pased an act relating to insurance. It contained a reciprocity provision providing that if the existing or future laws of any other state should impose on Kansas insurance companies seeking to do business there heavier burdens than those imposed by this state, this state should impose equal burdens on companies coming here from other states. The proper amount of fees, charges, etc., was to be paid to the superintendent of insurance, the licensing officer. The statute was held to be constitutional. In the syllabus the court stated:

"While the legislative power of the state is by the constitution vested in the legislature, yet that body has authority to pass a law whose operation is by its terms made to depend on a contingency, even though that contingency be some action on the part of the legislature of another state."

Under this decision the effect of a statute may be contingent, according to existing law of another state, according to future law of another state, or according to a change in the law of another state. In *City of Pittsburg v. Robb*, supra, we stated that it is now settled beyond dispute by both state and federal decisions that the legislature may prescribe a rule to be applied according to the existence or nonexistence of some fact which some officer or board is required to ascertain. In analyzing 8-1336 and 8-1340 it is clear that the Kansas legislature has by no means totally yielded to the Congress its authority to establish maximum speed limits in Kansas. By virtue of 8-1340 the supplemental act, which creates the 55 miles per hour speed limit, expires on the date when the Congress of the United States shall remove regulations on maximum speed limits and the provisions of 8-1557, 8-1558, 8-1559, and 8-1560 immediately come into operation. Should Congress prescribe a different maximum speed limit for a state to

qualify for federal highway funds, such action does not per se establish a new maximum speed limit in Kansas. When Congressional action occurs, it is the state highway commission (secretary of transportation) acting pursuant to statute who has the authority to establish the maximum speed limits of this state. Here the legislature, rather than delegating legislative power to the Congress, has simply enacted a law to become operational on the happening of a certain contingency or future event.

It should be noted that a similar Nebraska statute was recently upheld in *State v. Padley*, 195 Neb. 358, 237 N. W. 2d 883. In that case the Supreme Court of Nebraska stated the general rule discussed above that, although the legislature cannot delegate its power to make a law, it can make a law to become operative on the happening of a certain contingency or on the ascertainment of a fact on which the legislature intends to make its own law depend. The court then pointed out that it is the privilege of the Congress to fix the terms on which federal money allotments to the states are to be made; it is entirely optional with the states to accept or reject such offers. The mere fact that sharing in federal road funds was contingent on the state's adopting a maximum highway speed limit of 55 miles per hour did not render the Nebraska speed limit statute unconstitutional. *State v. Padley*, supra, is directly in point. We have concluded that under the circumstances presented in this case the Kansas legislature has not unlawfully delegated or surrendered its legislative power to the Congress of the United States and the statutes in question are not unconstitutional for that reason.

The judgment of the district court is affirmed.