(577 P.2d 362)

No. 49,096

SYLVESTER SMITH, JR., *Appellant,* v. KEVIN P. MARSHALL, a Minor, by Gloria A. Marshall, his Natural Mother and Next Friend, *Appellees.*

Opinion filed April 14, 1978.

*Fred W. Phelps, Jr.,* and *Betty Joan Phelps,* of Fred W. Phelps, Chartered, of Topeka, for the appellant.

*Harold S. Youngentob* and *Thomas E. Wright,* of Goodell, Casey, Briman & Cogswell, of Topeka, for the appellee.

Before FOTH, C.J., ABBOTT and PARKS, JJ.

PARKS, J.: This is an action brought pursuant to the Kansas Automobile Injury Reparations Act, K.S.A. 1975 Supp. 40-3101, *et seq.,* commonly known as the Kansas No-Fault Insurance Act. Summary judgment for the defendant was entered on April 19, 1977. Plaintiff appeals.

As we turn to the factual background of this dispute, we should be mindful of the rules relating to the granting and appellate review of summary judgments. K.S.A. 60-256(*c*) provides for the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . ."

An appellate court should read the record in the light most favorable to the party against whom summary judgment was entered. It should take such party's allegations as true, and it should give him the benefit of the doubt when his assertions conflict with those of the movant. Factual inferences tending to

show triable issues must be considered in the light most favorable to the existence of those issues. If there is a reasonable doubt as to the existence of fact, a motion for summary judgment will not lie. Moreover, pleadings and documentary evidence must be given a liberal construction in favor of the party against whom the motion is directed. *Mildfelt v. Lair,* 221 Kan. 557, 561 P.2d 805, and cases cited therein.

On May 30, 1975, the plaintiff Sylvester Smith, Jr., Andy Smith, and Thomas Brown were passengers in a car driven by the defendant, Kevin Marshall. The defendant pulled over to the lefthand curb on a one-way street in Topeka, Kansas, to let the plaintiff out of the car. Plaintiff got out of the passenger side of the automobile and started toward his house, walking in front of the defendant's vehicle and behind another car which was parked at the curb. While plaintiff was between the two cars, defendant attempted to put his car in reverse, but instead put it in neutral or drive. The car then rolled forward, pinning the plaintiff between the two cars and injuring his lower right leg.

The crucial issue is whether under the facts of this case there remain material questions of fact to be decided by the jury.

One of the questions before the trial court was whether the threshold requirements for maintaining a claim for pain and suffering have been satisfied; or more precisely, whether the scar on the plaintiff's right leg is a permanent disfigurement within the meaning of K.S.A. 1975 Supp. 40-3117. The trial court ruled as a matter of law that it is not. We disagree and hold that it is a matter of fact to be determined by the trier of fact.

In resolving that question it was necessary to examine the following section of the Kansas Automobile Injury Reparations Act, which provides that:

"In any action for tort brought against the owner, operator . . . of a motor vehicle . . . a plaintiff may recover damages in tort for pain, suffering, mental anguish, inconvenience and other non-pecuniary loss because of injury only in the event the injury requires medical treatment . . . having a reasonable value of five hundred dollars ($500) or more, or the injury consists in whole or in part of permanent disfigurement, a fracture to a weight-bearing bone, a compound . . . fracture, loss of a body member, permanent injury within reasonable medical probability, permanent loss of a bodily function or death. . . ." [K.S.A. 1975 Supp. 40-3117.]

The only condition prescribed by K.S.A. 1975 Supp. 40-3117 which is applicable in this case is that pertaining to permanent disfigurement.

In resisting the defendant's motion for summary judgment, the plaintiff presented evidence as to the nature and extent of his injuries. A chiropractor, Dr. Counselman, testified that the plaintiff had in fact suffered permanent disfigurement and permanent injury. Counselman had examined the plaintiff approximately five days after the impact, at which time he discovered that the plaintiff's bone and soft tissue were bruised. Moreover, at the defense counsel's request, Dr. Counselman used the plaintiff's leg as an exhibit and pointed out the scar to the court. His testimony revealed that the injured area was right on top of the bone and that "[i]f you hold it just right you can pull it and see a scar."

Following this line of questioning, the trial judge ran his finger over the leg in the area which Dr. Counselman had described and from a visual and a touch observation found no scarring, *i.e.,* "broken skin with a lesion over the scarring." He further noted that the area was smooth but ascertainable as an innocuous discoloration of the right leg extending approximately one and one-fourth inches long and one-half inch in width.

By agreement of court and counsel, a photograph of plaintiff's leg was taken and made a part of the record. This exhibit has been examined by this court.

An analogous situation arose in Florida where the plaintiff was injured in an automobile accident which resulted in a 4.5 centimeter trap-door scar on his forehead. The trial court granted summary judgment in favor of the defendant because the scar was not a "permanent disfigurement" as required by the threshold requirements of the Florida Automobile Reparations Reform Act. The applicable Florida statute then in effect (F.S. 627.737) was similar to K.S.A. 1975 Supp. 40-3117 and, like our statute, did not define the word "disfigurement." In reversing the trial court the Florida District Court of Appeal said:

"We hold that a permanent scar may be a permanent disfigurement within the contemplation of F.S. 627.737. We do not imply that every scar is a disfigurement but *when the existence of the scar is established, whether or not it is a disfigurement is a matter of fact to be determined by the trier of fact* and may not be resolved, when properly placed in issue, by summary judgment." [*Gillman v. Gillman,* 319 So. 2d 165, 166-167 (Fla. App. 1975).] [Emphasis supplied.]

Dr. Counselman's testimony established the existence of the scar. Although the defendant's counsel questioned the severity of the injury, he apparently conceded the scar's existence by saying:

"And if I have ever seen a minor claim with regard to a claim of disfigurement, the scar in question, I think has to fall in the category of being a minor claim. Now the statute is . . . written . . . in terms of . . . 'permanent disfigurement.' And permanent disfigurement, defined in my motion for Summary Judgment, is substantial disfigurement of a person. . . . It isn't any minor disfigurement. It is supposed to be a major disfigurement."

Contrary to the no-fault statutes in other states, there is no requirement in our statute that the permanent disfigurement be "significant" (now in effect in Florida) or "serious" (Connecticut). The applicable threshold requirement of K.S.A. 1975 Supp. 40-3117 is simply permanent disfigurement. It being the function of this court to interpret statutes and not to rewrite legislation, we decline to view K.S.A. 1975 Supp. 40-3117 as requiring that the permanent disfigurement be anything other than "permanent" and a "disfigurement." It is not our province to determine what the law should or should not be. *Dougan, Administratrix v. McGrew,* 187 Kan. 410, 415, 357 P.2d 319; *State, ex rel., v. Mills,* 171 Kan. 397, 401, 233 P.2d 720.

We adopt the *Gillman* decision as authority for vacating the summary judgment. Once the existence of a scar has been established, whether or not it is a permanent disfigurement is a matter of fact to be determined by the trier of fact on a case-by-case basis.

Judgment is reversed and the case is remanded for further proceedings.

FOTH, C.J., dissenting.

Where my colleagues and I part company in this case is in our interpretation of K.S.A. (now 1977 Supp.) 40-3117, the threshold provision of our so-called "no-fault" insurance law. The majority finds no requirement in our statute that a permanent disfigurement be "significant" or "serious"; I believe those terms are implied by the statute read as a whole. The majority thinks that to read such qualifying adjectives into the statute would be to rewrite the statute; I believe such a reading is required by the manifest legislative intent.

The nature of the claimed disfigurement[1] is not seriously in dispute. Plaintiff's treating chiropractor, when asked to point out the injury to the court below, responded:

---

[1] To meet the threshold requirement plaintiff claims a "permanent injury" as well as permanent disfigurement. However, it appears that plaintiff's injury stopped bothering him within two weeks of the accident and hadn't bothered him since, up to the time of the hearing below almost two years later. The "injury" alleged to be permanent is the discoloration on plaintiff's leg, and I understand the majority to deal with it solely in terms of a "permanent disfigurement."

"A. That is a scar right here. If you hold it just right you can pull it and see a scar."

The trial judge made a personal inspection of plaintiff's leg and described his observations for the record:

". . . The record should show that the Court did observe the right leg of Mr. Smith. The parties should also note the Court's observations, the Court did run his finger on the leg in the area that Dr. Counselman described. And the Court's observation, from just a visual and from a touch indication, was that there was no scarring as we would understand broken skin with a lesion over the scarring. In other words, it was a smooth feeling. That the area that the Court did observe was ascertainable, discernible, it being more of a, at least to the visual view of the Court, it was more of a discoloration of Mr. Smith's leg. The record should show that Mr. Smith is black. The area in question was darker. It was more of a dark brown area. It was about an inch and a quarter in length and in the middle point running North and South on the leg toward the center, as Dr. Counselman indicated, and toward the center of the area. It extended to, perhaps, about a half an inch. But I would say it would be East and West across the leg and about an inch and a quarter long. Now that is what the visual observation indicates. . . ."

## In granting summary judgment for defendant the court wrote:

"It is true that the extent of injury or whether scarring is permanent or not is usually a jury question. But here, it is a matter of law that plaintiff must qualify as to one or more of the threshold criterion to be able to maintain this action under the no-fault doctrine.

"The Court finds that the area of injury to plaintiff is neither unsightly, misshapen or in any manner a deformity nor does it in any way impair the beauty, symmetry or appearance of plaintiff's leg. It is merely an innocuous discoloration of the right leg extending approximately one and one-fourth inches long and approximately one-half inch in width at its widest point. The Court finds as a matter of law plaintiff does not suffer from permanent disfigurement."

To me the trial court's findings are persuasive. While courts should not rewrite a statute where its language and meaning are clear, I find other principles of statutory construction applicable here. First, remedial legislation should be "liberally construed to effectuate the purpose for which it was enacted." *State, ex rel., v. Anderson,* 195 Kan. 649, Syl. 3, 408 P.2d 864 (1965). See also, *Young v. Barker,* 185 Kan. 246, 342 P.2d 150 (1959); *Wheeler v. Wheeler,* 196 Kan. 697, 414 P.2d 1 (1966). Second, where a literal construction would defeat the legislative purpose, a statute should be construed according to its reason and spirit. *State v. Dumler,* 221 Kan. 386, Syl. 2, 559 P.2d 798 (1977); *Kansas Commission on Civil Rights v. Howard,* 218 Kan. 248, Syl. 2, 544 P.2d 791 (1975). Such a construction may include the supplying

of omitted terms when necessary. *Parker v. Continental Casualty Co.,* 191 Kan. 674, Syl. 4, 383 P.2d 937 (1963); *Wolf v. Mutual Benefit Health & Accident Association,* 188 Kan. 694, 702, 366 P.2d 219 (1961).

Applying those principles to K.S.A. 40-3117, we find that the legislature has prohibited tort actions for pain, suffering and other nonpecuniary damages arising out of an automobile accident unless the plaintiff's injury meets one of eight criteria: it must (1) require at least $500 in medical expenses; (2) result in permanent disfigurement; (3) be a fracture of a weight-bearing bone; (4) be a fracture which is compound, comminuted, displaced or compressed; (5) involve loss of a body member; (6) be permanent; (7) result in permanent loss of a bodily function; or (8) result in death.

While some of these characteristics (death, in particular) obviously have more grave connotations than others, to my mind they all require an injury of some severity. To say that no matter how trivial the "disfigurement" it deserves to be ranked with the other seven threshold criteria seems to me to run contrary to the implicit but clear intent of the drafters of this legislation. Under the maxim *noscitur a sociis* (it is known from its associates), the term "permanent disfigurement" should be read as having the same general qualities and characteristics as its fellow terms. (*Cf., Farm Bureau Mutual Ins. Co. v. Carr,* 215 Kan. 591, 596, 528 P.2d 134 [1974].) In each of the other terms those qualities include an injury of substance; a disfigurement, to rank with them, should also be of substance.

In determining the legislature's purpose in enacting this statute we are not without guidance. In *Manzanares v. Bell,* 214 Kan. 589, 522 P.2d 1291 (1974), our Supreme Court spoke to the issue directly and forcefully:

". . . One of the obvious purposes of the Legislature in limiting recovery under the threshold provision was clearly to eliminate minor claims for pain and suffering. The Legislature could reasonably have thought that the number of such cases (see DOT study) was largely connected with *exaggerated claims for pain and suffering in instances of relatively minor injury.* Our prior decisions are to the effect that subjective complaints of pain and suffering defy accurate monetary appraisal. (*Domann v. Pence,* 183 Kan. 135, 325 P.2d 321; *Henderson v. Kansas Power & Light Co.,* 188 Kan. 283, 362 P.2d 60.) *In addition, minor 'nuisance' claims were often overpaid,* and as stated in *Pinnick v. Cleary,* [360 Mass. 1, 271 N.E.2d 592, 610], ' . . . It was clearly proper for the Legislature to conclude that the benefits of compensating an injured person for relatively minor pain and

*suffering, which as such entails no monetary loss did not warrant continuation of the practice when balanced against the evils it had spawned.'"* (pp. 610-11. Emphasis added.)

In this case we have the residual effect of a bruised shin, consisting of an "innocuous discoloration" an inch-and-one-quarter long by one-half inch at its widest. Assuming it to be permanent, I cannot believe it is the type of "disfigurement" intended by the legislature to support this plaintiff's claim for $100,000.00 in damages.[2] It seems to me this is a prime example of those "exaggerated claims for pain and suffering in instances of relatively minor injury" the Court recognized in *Manzanares,* and just the type of "minor nuisance" claim the legislature intended to eliminate.

I would affirm.

2. The petition was filed before the effective date of Rule No. 118, under which this claim for $100,000.00 would still be "in excess of ten thousand dollars"