No. 49,096

SYLVESTER SMITH, JR., *Appellant,* v. KEVIN P. MARSHALL, *Appellee.*

(587 P.2d 320)

Opinion filed December 9, 1978.

*Fred W. Phelps, Jr.,* of Fred W. Phelps, Chartered, of Topeka, argued the cause and *Betty Joan Phelps* and *Fred W. Phelps* were with him on the brief for the appellant.

*Harold S. Youngentob,* of Goodell, Casey, Briman & Cogswell, of Topeka, argued the cause and *Thomas E. Wright,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

McFARLAND, J.: This is an action brought under the provisions of the Kansas Automobile Injury Reparations Act (K.S.A. 1977 Supp. 40-3101 *et seq.*), commonly known as the Kansas No-Fault Insurance Act. Summary judgment was entered for the defendant, Kevin P. Marshall. The plaintiff, Sylvester Smith, Jr., appealed from the summary judgment and the Court of Appeals reversed the trial court. *Smith v. Marshall,* 2 Kan. App. 2d 213, 577 P.2d 362 (1978). The matter is before this Court on petition for review.

On May 30, 1975, the plaintiff was a passenger in a car driven by the defendant. The defendant drove his vehicle to the left curb of a one-way street in Topeka, Kansas. Plaintiff exited the vehicle from the passenger side and walked in front of the vehicle. Defendant attempted to put the vehicle in reverse, but instead put it in neutral or drive. The defendant's vehicle moved forward. The plaintiff's lower right leg was caught between defendant's vehicle and a parked automobile. These facts are not in dispute. The residual effect of plaintiff's injury was a discoloration of a small area of skin on his leg.

The issue before the trial court was whether or not, as a matter of law, the plaintiff's injury was sufficient to satisfy the threshold requirements of K.S.A. 1977 Supp. 40-3117 which provides:

"In any action for tort brought against the owner, operator . . . of a motor vehicle . . . a plaintiff may recover damages in tort for pain, suffering, mental anguish, inconvenience and other non-pecuniary loss because of injury only in the event the injury requires medical treatment . . . having a reasonable value of five hundred dollars ($500) or more, or the injury consists in whole or in part of permanent disfigurement, a fracture to a weight-bearing bone, a compound . . . fracture, loss of a body member, permanent injury within reasonable medical probability, permanent loss of a bodily function or death. . . ."

At the hearing on the motion, plaintiff's treating chiropractor, Dr. Guy Edward Counselman, testified:

"A   That is a scar right here. If you hold it just right you can pull it and see a scar.
"Q   [By Mr. Wright]   Oh, I see, right here?
"A   Yes.
"Q   And that is the permanent disfigurement that we are talking about?
"A   Yes.
      "THE COURT:   For the record, why don't you describe what we are talking about?
"A   It is a circular scar approximately three-fourths to one inch in diameter on the front center.

"Q  I don't agree that it is three-quarters to an inch in diameter.

"Q  (By The Court)  Doctor, are these the primaries? Am I looking right, about like that?

"A  Yes.

"Q  This is the upper and this is the lower?

"A  Yes.

"Q  That is about an inch or an inch and a quarter.

"A  You see, there is an area here, it apparently went like this and scraped most of it there. But you can see the extent of the scar. You can see some right there."

## The trial court described what it observed as follows:

"The record should show that the Court did observe the right leg of Mr. Smith. The parties should also note the Court's observations, the Court did run his finger on the leg in the area that Dr. Counselman described. And the Court's observation, from just a visual and from a touch indication, was that there was no scarring as we would understand broken skin with a lesion over the scarring. In other words, it was a smooth feeling. That the area that the Court did observe was ascertainable, discernible, it being more of a, at least to the visual view of the Court, it was more of a discoloration of Mr. Smith's leg. The record should show Mr. Smith is black. The area in question was darker. It was more of a dark brown area. It was about an inch and a quarter in length and in the middle point running North and South on the leg toward the center, as Dr. Counselman indicated, and toward the center of the area. It extended to, perhaps, about a half an inch. But I would say it would be East and West across the leg and about an inch and a quarter long. Now that is what the visual observation indicates."

Polaroid photographs of the plaintiff's leg were taken at the hearing to preserve the appearance of the leg for the record. These are consistent with what the court described.

The trial court's letter to counsel sustaining the defendant's motion for summary judgment is as follows:

"The Court has considered defendant's motion to dismiss the action on the basis that as a matter of law plaintiff has failed to show that he may maintain this action under K.S.A. 40-3117.

"The Court required the plaintiff to introduce evidence prior to commencement of the jury trial and pursuant thereto, plaintiff called G. Edward Counselman, Orthopedic Chiropractor and the plaintiff himself, only to submit to an examination by the Court of the alleged injury.

"The Court examined plaintiff's right leg and made a record of its observations. A Polaroid picture was taken and marked as court exhibit 1, although three pictures had to be taken to reproduce the condition of plaintiff's leg.

"Dr. Counselman testified that in his opinion there is disfigurement because of scarring on leg and constitutes permanent injury. On cross-examination the doctor testified the permanent disfigurement is the scarring. 'If you hold it just right, you can pull it and see a scar', the doctor testified.

"The plaintiff agrees that he has not met the $500.00 threshold and that there

has been no fracture of the right leg. The remaining factor 'permanent disfigurement, in part or whole', is the issue here. Does the plaintiff have 'permanent disfigurement' in order to maintain this action.

"The question before the Court is the meaning of 'permanent disfigurement'. Plaintiff cites two cases, 25 S.E.2d 865 (N.C. 1943) and 299 N.E.2d 618 ([Ind. App.] 1973). The former was a Workmen's Compensation case and the latter was an assault and battery case. The [Indiana Court of Appeals] applied the definition set out in an earlier Illinois personal injury case and defined 'disfigurement' as 'that which impairs or injures the beauty, symmetry or appearance of a person or thing; that which renders unsightly, misshapen or imperfect or deforms in some manner'.

"The Court in its observations noted the lack of any break of skin, or lesion but more of a discoloration of skin. The plaintiff is a black man and the area in question appeared darker than plaintiff's skin. The Court and Doctor Counselman stated the dimensions of the area.

"Note, too, Dr. Counselman's statement that 'if you hold it just right, you can pull it and see a scar'.

"It is true that that [sic] the extent of injury or whether scarring is permanent or not is usually a jury question. But here, it is a matter of law that plaintiff must qualify as to one or more of the threshold criterion to be able to maintain this action under the no-fault doctrine.

"The Court finds that the area of injury to plaintiff is neither unsightly, misshapen or in any manner a deformity nor does it in any way impair the beauty, symmetry or appearance of plaintiff's leg. It is merely an innocuous discoloration of the right leg extending approximately one and one-fourth inches long and approximately one-half inch in width at its widest point. The Court finds as a matter of law plaintiff does not suffer from permanent disfigurement.

"Motion of defendant to dismiss action is sustained at defendant's costs."

The Court of Appeals, in a split decision, vacated the summary judgment. In so doing it adopted the decision in *Gillman v. Gillman,* 319 So. 2d 165 (Fla. App. 1975), saying:

"An analogous situation arose in Florida where the plaintiff was injured in an automobile accident which resulted in a 4.5 centimeter trap-door scar on his forehead. The trial court granted summary judgment in favor of the defendant because the scar was not a 'permanent disfigurement' as required by the threshold requirements of the Florida Automobile Reparations Reform Act. The applicable Florida statute then in effect (F.S. 627.737) was similar to K.S.A. 1975 Supp. 40-3117 and, like our statute, did not define the word 'disfigurement.' In reversing the trial court the Florida District Court of Appeal said:

'We hold that a permanent scar may be a permanent disfigurement within the contemplation of F.S. 627.737. We do not imply that every scar is a disfigurement but *when the existence of the scar is established, whether or not it is a disfigurement is a matter of fact to be determined by the trier of fact* and may not be resolved, when properly placed in issue, by summary judgment.' [*Gillman v. Gillman,* 319 So. 2d 165, 166-167 (Fla. App. 1975).] [Emphasis supplied.]" 2 Kan. App. 2d at 215.

Following the reasoning of *Gillman,* the majority opinion con-

cluded that the existence of the scar had been established and that it was therefore error by the trial court to grant summary judgment to the defendant.

A case with similar facts and an opposite result is *Duncan v. Beck*, 553 S.W.2d 476 (Ky. App. 1977). Kentucky has similar threshold requirements for the maintenance of such an action. Ky. Rev. Stat. § 304.39-060(2)(b) (1978 Supp.). In *Duncan* the trial court likewise entered a summary judgment for the defendant for the failure, as a matter of law, of the injuries to meet the threshold test. In affirming the trial court the Court of Appeals of Kentucky held:

"As the result of the abrasions received by appellant, Jake Duncan, he has some small scars upon his right knee. His physician testified that the scars can only be seen upon close examination of the knee. It is appellants' contention that these scars give rise to a permanent disfigurement under KRS 304.39-060(2)(b). To support their position, appellants cite several Kentucky cases that deal with the issue of permanency of scarring and also quote the definition of 'disfigurement' which is contained in Black's Law Dictionary. That definition is as follows: 'That which impairs or injures the beauty, symmetry or appearance of a person or thing, that which renders unsightly, misshapen or imperfect or deforms in some manner.'

"When the legislature enacted KRS 304.39-010 et seq., it was their intention to limit tort claims arising out of automobile accidents. This limitation only permits claims of those with serious injuries. Given the facts presented concerning the small scars on the knee of appellant, Jake Duncan, this court does not believe that such injuries constitute 'disfigurement' under the statute." 553 S.W.2d at 478.

The dissent of Chief Judge Foth is in accord with the reasoning of the Kentucky court and is as follows:

"Where my colleagues and I part company in this case is in our interpretation of K.S.A. (now 1977 Supp.) 40-3117, the threshold provision of our so-called 'no-fault' insurance law. The majority finds no requirement in our statute that a permanent disfigurement be 'significant' or 'serious'; I believe those terms are *implied by the statute read as a whole. The majority thinks that to read such* qualifying adjectives into the statute would be to rewrite the statute; I believe such a reading is required by the manifest legislative intent.

"The nature of the claimed disfigurement is not seriously in dispute. Plaintiff's treating chiropractor, when asked to point out the injury to the court below, responded:

'A.   That is a scar right here. If you hold it just right you can pull it and see a scar.'

"The trial judge made a personal inspection of plaintiff's leg and described his observations for the record:

.   .   .   The record should show that the Court did observe the right leg of Mr. Smith. The parties should also note the Court's observations, the

Court did run his finger on the leg in the area that Dr. Counselman described. And the Court's observation, from just a visual and from a touch indication, was that there was no scarring as we would understand broken skin with a lesion over the scarring. In other words, it was a smooth feeling. That the area that the Court did observe was ascertainable, discernible, it being more of a, at least to the visual view of the Court, it was more of a discoloration of Mr. Smith's leg. The record should show that Mr. Smith is black. The area in question was darker. It was more of a dark brown area. It was about an inch and a quarter in length and in the middle point running North and South on the leg toward the center, as Dr. Counselman indicated, and toward the center of the area. It extended to, perhaps, about a half an inch. But I would say it would be East and West across the leg and about an inch and a quarter long. Now that is what the visual observation indicates. . . .'

"In granting summary judgment for defendant the court wrote:

'It is true that the extent of injury or whether scarring is permanent or not is usually a jury question. But here, it is a matter of law that plaintiff must qualify as to one or more of the threshold criterion to be able to maintain this action under the no-fault doctrine.

'The Court finds that the area of injury to plaintiff is neither unsightly, misshapen or in any manner a deformity nor does it in any way impair the beauty, symmetry or appearance of plaintiff's leg. It is merely an innocuous discoloration of the right leg extending approximately one and one-fourth inches long and approximately one-half inch in width at its widest point. The Court finds as a matter of law plaintiff does not suffer from permanent disfigurement.'

"To me the trial court's findings are persuasive. While courts should not rewrite a statute where its language and meaning are clear, I find other principles of statutory construction applicable here. First, remedial legislation should be 'liberally construed to effectuate the purpose for which it was enacted.' *State, ex rel., v. Anderson,* 195 Kan. 649, Syl. 3, 408 P.2d 864 (1965). See also, *Young v. Barker,* 185 Kan. 246, 342 P.2d 150 (1959); *Wheeler v. Wheeler,* 196 Kan. 697, 414 P.2d 1 (1966). Second, where a literal construction would defeat the legislative purpose, a statute should be construed according to its reason and spirit. *State v. Dumler,* 221 Kan. 386, Syl. 2, 559 P.2d 798 (1977); *Kansas Commission on Civil Rights v. Howard,* 218 Kan. 248, Syl. 2, 544 P.2d 791 (1975). Such a construction may include the supplying of omitted terms when necessary. *Parker v. Continental Casualty Co.,* 191 Kan. 674, Syl. 4, 383 P.2d 937 (1963); *Wolf v. Mutual Benefit Health & Accident Association,* 188 Kan. 694, 702, 366 P.2d 219 (1961).

"Applying those principles to K.S.A. 40-3117, we find that the legislature has prohibited tort actions for pain, suffering and other nonpecuniary damages arising out of an automobile accident unless the plaintiff's injury meets one of eight criteria: it must (1) require at least $500 in medical expenses; (2) result in permanent disfigurement; (3) be a fracture of a weight-bearing bone; (4) be a fracture which is compound, comminuted, displaced or compressed; (5) involve loss of a body member; (6) be permanent; (7) result in permanent loss of a bodily function; or (8) result in death.

"While some of these characteristics (death, in particular) obviously have more

grave connotations than others, to my mind they all require an injury of some severity. To say that no matter how trivial the 'disfigurement' it deserves to be ranked with the other seven threshold criteria seems to me to run contrary to the implicit but clear intent of the drafters of this legislation. Under the maxim *noscitur a sociis* (it is known from its associates), the term 'permanent disfigurement' should be read as having the same general qualities and characteristics as its fellow terms. (Cf., *Farm Bureau Mutual Ins. Co. v. Carr,* 215 Kan. 591, 596, 528 P.2d 134 [1974].) In each of the other terms those qualities include an injury of substance; a disfigurement, to rank with them, should also be of substance.

"In determining the legislature's purpose in enacting this statute we are not without guidance. In *Manzanares v. Bell,* 214 Kan. 589, 522 P.2d 1291 (1974), our Supreme Court spoke to the issue directly and forcefully:

'. . . *One of the obvious purposes of the Legislature in limiting recovery under the threshold provision was clearly to eliminate minor claims for pain and suffering.* The Legislature could reasonably have thought that the number of such cases (see DOT study) was largely connected with *exaggerated claims for pain and suffering in instances of relatively minor injury.* Our prior decisions are to the effect that subjective complaints of pain and suffering defy accurate monetary appraisal. (*Domann v. Pence,* 183 Kan. 135, 325 P.2d 321; *Henderson v. Kansas Power & Light Co.,* 188 Kan. 283, 362 P.2d 60.) *In addition, minor "nuisance" claims were often overpaid,* and as stated in *Pinnick v. Cleary,* [360 Mass. 1, 271 N.E.2d 592, 610], " . . . *It was clearly proper for the Legislature to conclude that the benefits of compensating an injured person for relatively minor pain and suffering, which as such entails no monetary loss did not warrant continuation of the practice when balanced against the evils it had spawned." '* (pp. 610-11. Emphasis added.)

"In this case we have the residual effect of a bruised shin, consisting of an 'innocuous discoloration' an inch-and-one-quarter long by one-half inch at its widest. Assuming it to be permanent, I cannot believe it is the type of 'disfigurement' intended by the legislature to support this plaintiff's claim for $100,000.00 in damages. It seems to me this is a prime example of those 'exaggerated claims for pain and suffering in instances of relatively minor injury' the Court recognized in *Manzanares,* and just the type of 'minor nuisance' claim the legislature intended to eliminate.

"I would affirm." 2 Kan. App. 2d at 216-219 (footnotes omitted).

We find the dissenting opinion of the Court of Appeals to be compelling and the same is adopted as the opinion of this Court.

The decision of the Court of Appeals is reversed and the trial court is affirmed.