(637 P.2d 422)

No. 52,267

MARGALEE SELLS, *Appellant,* v. UNIFIED SCHOOL DISTRICT NO. 429, DONIPHAN COUNTY, KANSAS, *Appellee.*

Petition for review granted January 20, 1982.

Opinion filed December 3, 1981.

*Wesley A. Weathers* and *Patricia Riley,* of Crane, Martin, Claussen, Hamilton & Barry, of Topeka, for appellant.

*Fred W. Rausch, Jr.,* of Topeka, for appellee.

Before JUSTICE PRAGER, presiding, ABBOTT, J., and HARMAN, C.J. Retired, assigned.

ABBOTT, J.: This case involves the nonrenewal of a tenured teacher's contract by Unified School District No. 429, Doniphan County, Kansas (USD 429). The teacher, Margalee Sells, appeals from the trial court's judgment affirming USD 429's decision.

The salient facts do not appear to be in dispute. The five unified districts in Doniphan County, Kansas (406, 425, 429, 433 and 486), formed the Doniphan County Special Education Co-operative (Co-op) in 1975, pursuant to K.S.A. 12-2901 *et seq.,* to provide mandated special education services. USD 429 was the sponsoring district for the Co-op. The other four districts are not parties to this action. Highly simplified, each of the five districts paid its share of the expenses for the program to USD 429, which administered it, and each district was represented on a board that furnished advice to USD 429. USD 429 was the final authority for the Co-op and made the decisions on the hiring and firing of

teachers. All teachers who taught in the Co-op had contracts of employment with USD 429. Ms. Sells and fourteen other teachers were employed by USD 429 as special education teachers. Sells had "some twenty years" teaching experience and was employed as a school psychologist for the Co-op.

The record indicates the unified districts desired to change their method of providing special education services by forming a separate entity to handle administrative functions as authorized by statute. There would be no sponsoring district; administration would be by a board composed of one member from each unified district. The only purpose expressed in the record for the change was so that each district would share equal responsibility in the administration of the special education program. The same educational program would be offered and the same pay schedule would be used by the separate legal entity.

The five unified districts entered into a written agreement to terminate the Co-op as of June 30, 1979, and to commence business with the new entity (interlocal) on July 1, 1979. That agreement provided that USD 429 was to give notice of nonrenewal to all of the special education teachers then employed by USD 429. The agreement also provided that the new interlocal would hire most of the USD 429 special education teachers, and that those teachers were to receive notice of that intent when they were given their notice of nonrenewal by USD 429. Two of the special education teachers did not plan to return for reasons not germane to this appeal. The remaining thirteen received notices from USD 429 that their contracts would not be renewed. Twelve of those also received at the same time a contract offering employment by the new entity. The thirteenth, Ms. Sells, received only a notice of nonrenewal; eventually a second notice to her gave as the only reason for nonrenewal that USD 429 would not be the sponsoring district for the special education program after June 30, 1979.

Pursuant to her rights as a tenured teacher, Sells requested a due process hearing from USD 429. The hearing was held, and on a two-to-one vote it was recommended that her contract be renewed. The school board of USD 429 determined not to renew Sells's contract. She appealed to the district court. The district court determined that the decision by USD 429 to form the new interlocal agency was not arbitrary, capricious or fraudulent, and

that the fact USD 429 itself would no longer offer special education but would secure the services through the new entity amounted to "good cause" for not renewing the employment of a tenured teacher. Sells appeals. The new entity is not now and has not been a party to any of the proceedings.

Sells argues that as a tenured teacher she has the right to a renewal of her employment contract with USD 429 pursuant to the continuing contract law, K.S.A. 72-5410 *et seq.,* unless USD 429 can show good cause for nonrenewal as provided for in the due process procedure provided in K.S.A. 72-5436 *et seq.* and *Gillett v. U.S.D. No. 276,* 227 Kan. 71, 605 P.2d 105 (1980). USD 429 agrees and relies for good cause on the fact that it will no longer be teaching special education as a sponsoring district, but instead will provide mandated special education to its students by way of being a member of the new entity. Sells counters that the legislature has foreseen the problem before us and has provided protection for teachers by means of a statutory procedure whereby a school district can be released from its contract obligations, and that USD 429 has failed to comply with the procedure provided by the legislature.

In construing a statute, the fundamental rule of statutory construction is that the purpose and intent of the legislature governs when that intent can be ascertained from the statute. *State v. Dumler,* 221 Kan. 386, Syl. ¶ 1, 559 P.2d 798 (1977); *Farm & City Ins. Co. v. American Standard Ins. Co.,* 220 Kan. 325, 552 P.2d 1363 (1976). As noted in *In re Estate of Bowman,* 172 Kan. 17, 22, 238 P.2d 486 (1951), this court cannot nullify legislative will nor concern itself with the wisdom of legislative policy. Our function is to ascertain legislative intent, which appears to be clear in this instance.

The legislature has provided a statutory method whereby a school district can relieve itself of contract obligations when it joins a new interlocal cooperative to furnish statutorily mandated special education to its students. In our opinion, the factual situation in this case is controlled by K.S.A. 1980 Supp. 12-2904(*e*), which provides:

"No agreement made pursuant to this act shall relieve any public agency of any obligation or responsibility imposed upon it by law except that to the extent of *actual and timely* performance thereof by a joint board or other legal or administrative entity created by an agreement made hereunder, said performance may be offered in satisfaction of the obligation or responsibility." (Emphasis supplied.)

We are satisfied that a tenured teacher's right to a continuing contract is an "obligation or responsibility imposed . . . by law" within the meaning of K.S.A. 1980 Supp. 12-2904(*e*). As we view that section, it states that no agreement made pursuant to the Interlocal Cooperation Act shall relieve a school district of its obligation under the continuing contract law except to the extent the new entity *actually* and *timely* performs the contractual obligation imposed by the continuing contract law. Thus, the legislature intended that a school district not be allowed to use an interlocal cooperative agreement as "good cause" to terminate a tenured teacher. In our opinion, the new entity may perform the contracting district's obligation or responsibility imposed by the continuing contract law by following established procedure to not renew the teacher for good cause if it (in good faith) does not need the teacher. USD 429 argues that although the new interlocal might arguably be responsible under the continuing contract law, it is not a party to this action. The legislature did not intend to relieve a district in USD 429's position until there had been "actual and timely performance" by the new entity. Perhaps the legislature thought that a district would protect itself in an agreement to form a new entity, having been forewarned by the legislature that the district would not be relieved of its responsibility except to the extent of actual and timely performance by the new entity.

Reversed and remanded with direction to determine plaintiff's damages, if any.